## MILLS et al. (RIDER, Intervener) v. MILLS.

(Circuit Court, D. Oregon. March 30, 1894.)

No. 1,910.

PROPERTY SUBJECT TO TRUST—PURCHASE BY TRUSTEE.

The purchase by a trustee, from the cestui que trust, of the property which is subject to the trust, is not interdicted by the statute of Oregon, and will be upheld by the court where no advantage was taken of the fiduciary relation, no fraud was practiced, and the consideration was adequate. 57 Fed. 873, affirmed.

The following opinion was rendered upon a rehearing in this case. The former opinion in the case will be found fully reported in 57 Fed. 873.

Frank V. Drake, for plaintiffs.
N. B. Knight, for defendant.

GILBERT, Circuit Judge. A rehearing was ordered in this case upon the question of law passed upon by the court in the former opinion, regarding the power of the defendant, Fred H. Mills, to deal with Warren Mills concerning the property belonging to an estate of which he was then the administrator. Upon reargument of that question, and consideration of the authorities presented by the respective parties, I am convinced that the views of the court upon that question, as contained in the original opinion, are correct. This is not the case of an administrator

buying at his own sale, which is interdicted by the statute of Oregon. It is rather the case of a trustee purchasing from a cestui que trust the property which is the subject of the trust. In such a case the transaction would be upheld by the court, provided there was no advantage taken of the fiduciary relation, no fraud was practiced, and the consideration was adequate. It is claimed in this case, however, that the evidence shows the consideration to have been inadequate. The price which Fred H. Mills promised to pay Warren Mills for the personal property was $3,800. That was to cover the whole title to the personalty. Warren Mills claimed to be the owner of one undivided half of the personalty by virtue of his father's will. Shortly before the transaction by which he sold to Fred H. Mills, he had purchased the other half from J. B. Rider, who had owned the same jointly with Warren Mill's father. It is impossible to believe from the evidence that Warren Mills was not acquainted with the value of the property that he was selling to Fred H. Mills. He had seen the property; he had had it inventoried some time before; but the most significant fact is that he had purchased an undivided half from J. B. Rider, a man who had owned and been in possession of the property, and was aware of its value. In buying out the interest of J. B. Rider, Warren Mills undoubtedly considered and discussed the value of the interest he was buying, and satisfied himself that the price he was paying was proportionate to that value. One witness, William M. Rider, testifies that the value was more than twice the price at which the property was sold to Fred H. Mills. In his petition for leave to intervene, however, he places the value at $4,000. There is no other witness that testifies that the value was any greater than $3,800. The values affixed to the property by William M. Rider for the horses and cattle seem to me fanciful prices, in the absence of any showing that the stock was different from ordinary cattle and horses. It is likely, moreover, that in this transaction Warren Mills was intending to favor his cousin, who stood very high in his esteem. He had the right, if he chose, to make a present to Fred H. Mills of his interest in the estate, and the parties to this suit can have no greater right to ignore the transaction, or set the same aside, than Warren Mills himself would have had if he were still living and prosecuting this suit. A considerable portion of the argument of counsel for the complainant seems to be based upon the fraud and inequity of the conduct of Fred H. Mills, subsequent to the death of Warren Mills; but, in deciding whether or not the title to the personalty passed to Fred H. Mills, the court regards only the transaction between the parties at the time. If Fred H. Mills acquired a title to that property by purchase from Warren Mills, there is no principle of equity which would authorize the court to say that he has forfeited his rights by wrongful acts since done. Concerning the purchase of the McCollum lease, however, I am inclined to the view that that transaction should be set aside. Fred H. Mills claims to have paid for that lease $800 in cash. I am of the opinion that his testimony in that regard is untrue;

that he had no money, and paid no money to Warren Mills in connection with the transaction; and to that extent the decree heretofore ordered will be modified. The principles applicable to the sale of the personalty apply also to the lease of the realty. For that lease the defendant was to pay $1,000 annual rent. There is no intimation that the amount of the rent is inadequate, or that the contract of lease was procured by unfair means. By the covenants of the lease it is provided that the rights of the defendant thereunder may be forfeited, and the lease canceled, for nonpayment of rent.