BYRNE v. JONES et al.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1908.)

No. 2,586.

**1.** Trusts—Trustee may Purchase Directly of the Cestui Que Trust upon Full Disclosure.

A trustee or an agent may purchase the trust property directly from his cestui que trust sui juris, or principal, on condition that the latter intends that the former shall buy, that the former discloses to the latter, before the contract is made, every fact he has learned in his fiduciary relation which is material to the sale, that he exercises the utmost good faith, that no advantage is taken by misrepresentation, concealment of, or omission to disclose, important information gained as trustee or agent, and that the entire transaction is fair and open.

[Ed. Note.—For cases in print, see Cent. Dig. vol. 47, Trusts, § 331.]

**2.** Same—Trustee's Purchase of Cestui Que Trust Voidable for Omission to Disclose Material Fact.

But the foregoing condition is inexorable.

Any omission by the trustee or agent to disclose any fact material to the sale learned by him as trustee, any material misrepresentation, concealment, or other disregard of the condition renders the sale and the contract for it voidable, at the election of the cestui que trust or principal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 331.]

**3.** Same—Facts—Conclusions.

A trustee, residing in Arkansas to hold and sell land situated in that state and in Texas for himself and a cestui que trust residing in Massachusetts, sold a right of way to a railroad company for $725, and without disclosing these facts bought the interest of his cestui que trust for $7,500.

*Held:* The contract of sale was voidable at the election of the cestui que trust.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 331.]

**4.** Equity—Practice—Settlement of Account before Decree of Sale Preferred.

Where an accounting and a sale of property are required, a settlement of the account and a determination of the extent of the rights of the parties in the property under an interlocutory decree before the final decree of sale is made is preferable in ordinary cases to a decree of sale before the accounting, because in that way parties may have the benefit of a knowledge of the extent of their interests before the sale, and because this course permits the review by a single appeal of questions which two appeals are necessary to challenge when the decree of sale precedes the settlement of the accounting.

**5.** Same—A Court of Equity has Power to Sell and Convey Land Beyond its Jurisdiction, to Execute a Trust or Enforce a Contract.

A court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master in suits to execute trusts, to undo frauds and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested in the real estate, because equity acts through the person.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Arkansas.

For opinion below, see 149 Fed. 457.

159 F.—21

L. A. Byrne, pro se (W. H. Arnold, on the brief), for appellant.
Wm. V. Tompkins (Thos. C. McRae, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. On June 2, 1892, Erastus Jones of Worcester county, Mass., made a contract with L. A. Byrne, of Texarkana in the state of Arkansas, concerning a tract of about 2,600 acres of land situated in the states of Arkansas and Texas, to the effect that Byrne, who was an attorney at law, and who held defective titles to the land upon which Jones had vendors' liens for $6,117.42, should, without charge for his services, clear the titles to the land, prepare it for market, sell it as opportunity offered, apply the proceeds first to the payment of the expenses of clearing the title and preparing the property for market, second, to the payment of the amount owing Jones, and that the remainder of the land, or of its proceeds, should be owned by them equally. The larger part of the lands were in Arkansas, the titles of Byrne and Jones to the Arkansas land were tax titles, and they owned only an undivided interest in the lands in Texas. Under this agreement Byrne conducted about 15 lawsuits, purchased some outstanding claims, placed some tenants on the land to acquire title thereto by possession under the two years' statute of limitations of Arkansas, erected some small houses, cleared and fenced some of the land, paid some taxes, sold a right of way over some of the land for $725, and 220 acres of the real estate for $880, between June 2, 1892, and March 28, 1905. On the latter day he accepted an offer made by Jones to sell to him his interest in the lands for $7,500, and on the same day, or within two or three days thereafter, he made a contract with the defendants Heilbron, Wade, and Stribling to sell them about 1,600 acres of the real estate in consideration that they would furnish the $7,500 to purchase the interest of Jones. Within a few days after this contract was made Jones exhibited his bill in the court below to set aside these contracts on the ground that Byrne had induced him to make his offer to sell for $7,500 by withholding material information, which he had acquired while he was acting in a fiduciary capacity, relative to the management, condition, and value of the land. The defendants Heilbron, Wade, and Stribling answered that they made their alleged contract of purchase from Byrne in good faith, that they agreed to pay the full value of the land, that they had rescinded that agreement because they did not care to incur expense in defending it, and they disclaimed all interest in the property. Byrne denied that he had withheld any information to which Jones was entitled, and averred that he had tendered the $7,500, and that his contract of purchase was valid, and he filed a cross-bill to enforce specific performance of it. After the evidence had been taken and a final hearing had been had, the court rendered a decree by which it dismissed the cross-bill, dismissed without prejudice the suit so far as it related to the land in Texas, directed an immediate sale of the land in Arkansas and the return of the proceeds thereof to the court, and appointed a master to take and state an account of the expenses incurred and the moneys received under the contract of 1892, and Byrne appealed.

The first question is, was Byrne entitled to a specific performance of his contract of purchase of March, 1905? for an affirmative answer to that question avoids all others. The answer to it is conditioned by the relation of the parties to each other under the contract of 1892, and by the nature of the disclosure which Byrne made to Jones of the management, condition, and value of the property before that contract was made. For wise reasons of public policy, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning, or interest in, the property or the business of his correlate, to use that knowledge or interest, or to take advantage of his correlate's ignorance in the matter, to the detriment of the latter, or for his own benefit. Trice v. Comstock, 57 C. C. A. 646, 649, 121 Fed. 620, 623, and cases there cited. A trustee or an agent may purchase the trust property directly from his cestui que trust sui juris, or principal, on condition that the latter intends that the former shall buy, that the former discloses to the latter, before the contract is made, every fact he has learned in his fiduciary relation which is material to the sale, that he exercises the utmost good faith, that no advantage is taken by misrepresentation, concealment of, or omission to disclose, important information gained as trustee or agent, and that the entire transaction is fair and open. Michoud v. Girod, 4 How. 555, 11 L. Ed. 1076; Brown v. Cowell, 116 Mass. 461, 465; Mills v. Mills (C. C.) 63 Fed. 511; Steinbeck v. Bon Homme Mining Co., 81 C. C. A. 441, 447, 152 Fed. 333, 339. But the condition is inexorable. Any omission by the trustee or agent to disclose any fact material to the sale learned by him as trustee or agent, any material·misrepresentation, concealment, or other disregard of this condition, renders the sale and the contract for it voidable at the election of the cestui que trust or principal. Beach on Trusts and Trustees, § 518; Saunders v. Richard, 35 Fla. 28, 16 South. 679; Cornish v. Johns, 74 Ark. 231, 240, 85 S. W. 764; Thweatt v. Freeman, 73 Ark. 575, 580, 84 S. W. 720; Coles v. Trecothick, 9 Vesey, Jr., 234, 246; 2 Pomeroy's Equity Jurisprudence, § 958.

In 1899 Byrne collected $725 for a railroad right of way over some of these lands, and in answer to a request from Jones for a statement of his transactions he made an account, probably about May, 1903, in which he set forth a sale of 80 acres for $240, a collection of $122.45 rent, the expenditure of $451 for improvements on the land, and showed a balance due him of $123.55, but he did not charge himself with the $725, which would have changed the balance of this account from $123.55 in his favor to $651.45 against him. On December 6, 1904, he had offered $5,000 for Jones' interest in the property, and Bemis, the agent of Jones, had asked him for a statement in detail of the expenses and receipts on account of the land "before going any further in the matter." In answer to this request Byrne sent a statement of account in a letter of that date which opens with these words:

"Enclosed you will find a statement of expenditures and receipts on the Byrne-Jones land as expended by me, which statement was requested in your letter of recent date."

This statement, which purported to set forth the expenditures and receipts from 1892 to December 6, 1904, with the exception of the taxes from 1892 to 1899 which had been paid by Jones, shows a balance in favor of Byrne of $487.09, but contains no mention of the $725 which would have changed the result to a balance of $237.91 against him. On December 24, 1904, Byrne wrote that he knew that this statement was correct. He never disclosed, and Jones and his agent Bemis were ignorant until after this suit was commenced, that he had sold this right of way or that he had collected anything on account of it. The sale of the right of way and the collection of the compensation for it were facts material to a determination of the interest of Jones in the property, because they entitled him to at least $362.50 and interest more in cash than would have been due him in the absence of these facts, and their effect otherwise upon the value of the land could only be determined by an examination of its condition in the light of a knowledge of them. The right of way might have depreciated, and it might have enhanced the value of the property, and the cestui que trust was entitled to know of its existence and to estimate for himself its effect before he made this contract of sale of his interest in the land. Byrne's omission to disclose these facts in the statement of account demanded and furnished as the basis of a contemplated sale of the interest of Jones reduced the proof of his good faith far below that uberrima fides which is requisite to sustain a purchase of the trust property by a trustee from his cestui que trust. It was fatal to the contract of 1905, and there was no error in the dismissal of the cross-bill that was filed to enforce it.

The appellant contends that the decree for the sale of the land by the master and for the distribution of its proceeds is erroneous, because the contract of 1892 provided that Byrne should sell it, and because Jones and Byrne were joint owners or tenants in common of the real estate, and he contends that the property of tenants in common may be partitioned but may not be sold. But this is a suit to execute a trust created by the agreement of 1892. A court of equity is not required to permit a faithless trustee to continue to act according to the terms of the deed or contract which creates the trust, and where a sale of the property of joint owners, or of tenants in common, is requisite or convenient to enforce a violated trust, a court of chancery has ample power to decree it. A court may appoint its own master as trustee, and may direct him to carry out the terms of the trust agreement, or to make such a sale of the trust property and such a distribution of the proceeds as it deems just and equitable. Quinton v. Neville, 81 C. C. A. 673, 679, 680, 152 Fed. 879, 885, 886.

The court below charged the land with interest at the rate of 10 per cent. per annum upon the original amount of the liens of Jones, less the payments made thereon, from December 27, 1889, to the date of the decree, and this charge of interest after June 2, 1892, the date of the contract, is specified as error. When the contract was made, the vendor's liens were represented by 10 promissory notes which originally evidenced a debt of $5,250. Some payments had been made thereon, and the amount then owing was $6,117.42. A part of these

liens was secured upon the land in Arkansas, and a part of them upon the land in Texas. One of the effects of the agreement of 1892 was to charge all the land in both states in solido with the entire claim for $6,117.42, for that contract required all the proceeds of all the lands to be applied to the payment of this claim before any of it remaining unsold was released from this charge, and to give to the trustee Byrne plenary power to sell and convey any of this real estate free from all the liens of Jones. Byrne had taken the title to these lands subject to these liens to secure himself for about $5,000 which he had become liable to pay on account of his indorsements of the obligations of others. The contract provides that the legal title to this property shall remain in the name of Byrne; that he is empowered to make all sales thereof, "and in case of sale Erastus Jones will relinquish his vendor's lien on that of the land sold"; that out of the proceeds of the sale the expense of clearing the titles and preparing the land for market shall first be paid, "2nd: the proceeds arising from the sale of said lands shall next be applied to the payment of the balance of the purchase money now due Erastus Jones until all of said purchase money is paid"; that the remainder of the land, or the proceeds thereof, shall be owned by Byrne and Jones equally, and that if Byrne shall take notes for the purchase price of lands sold they shall be assigned to Jones, and the latter shall waive and relinquish his vendor's lien under the original notes to the part of the land so sold. These stipulations about the release and exchange of liens are invoked in argument to persuade that the liens of the original notes, and therefore the interest at 10 per cent. per annum specified therein, continued after this contract of 1892, was made as it did before. It was, however, within the competency of these parties to release this property from the charge of continuing interest from the date of the contract and at the same time to preserve the vendor's liens upon the respective tracts they charged, or to consolidate them into a single lien upon all the property. They agreed to consolidate them into a single lien, and a contract to relieve the property of the continuing interest was not less reasonable. The lands with their defective titles were of little value to Jones, who lived 1,500 miles distant and seems never to have seen them, unless the titles could be perfected and the lands could be sold without much expense. The perfection of the titles was the work of an attorney at law, and the service required was expensive. Byrne was a lawyer, and he held the titles. What was more natural than that Jones should set the interest to accrue on his claim against the legal services which Byrne was to render to perfect the titles and prepare the property for sale? The writing contains persuasive evidence that this was the agreement of the parties. It contains a stipulation that, after the expenses of clearing the titles and preparing the land for market are paid, the proceeds of the sales of it shall next be applied, not to the payment of the balance of the purchase money and interest, not to the payment of the balance of the purchase money that shall then be due, but "to the payment of the balance of the purchase money now due Erastus Jones," and that the remainder in land, or in money, shall be divided equally between

Jones and Byrne. The balance of the purchase money then due Erastus Jones was $6,117.42, and that sum, with interest thereon at 6 per cent. per annum from the commencement of this suit, is the limit of the amount charged against this property on account of the purchase money due Jones under the contract of 1892. The objection of the appellant to the interest upon this claim from June 2, 1892, until April 5, 1905, is sustained.

The court directs the master to give Byrne no credit for the expenses which he incurred in clearing and fencing about 140 acres of the land and in building and repairing three houses thereon, and to charge him with none of the rents which he derived from the property, and this ruling is specified as error. Byrne testified that it was necessary, in order to perfect the tax titles, to take pedal possession of the land by tenants and to hold it until the statute of limitations of Arkansas, which was two years, ran against other claimants, and that for this purpose, and also for the purpose of improving the land and obtaining some income from it, he expended, according to his final statement, which is found at pages 115 to 119 of the printed transcript of the record herein, about $1,100 in clearing and fencing the land and erecting and maintaining buildings thereon, and also about $500 more than he received back in furnishing teams, tools, and provisions to tenants who agreed to repay this money from the land, and that he collected $400 rent, so that he expended for all these purposes about $1,200 more than he received from the rents. The court below disallowed this portion of the account, and charged Byrne with the moneys which he had received from the sales of the land and had expended in this way, because it found the fact that Jones never knew that Byrne was using and never consented to his use of the proceeds of the sales for these purposes. This finding of fact is also challenged, but the evidence upon the issue is conflicting, there is no clear preponderance against it, and, under the familiar rule that the chancellor's finding of fact prevails unless the record clearly discloses a mistake therein, it must be affirmed.

There is, however, another consideration which bears with much force upon the question of the allowance of this portion of the account. It is that these improvements may have enhanced the value of the property, and, although Jones was not aware of them and did not consent to them, yet as he has applied for relief to a court of equity, the court below may well condition its grant of his prayer by the requirement that he who seeks equity shall do equity. If the market value of this property has been enhanced by these improvements, it is just and equitable that he who made them shall be reimbursed to the amount of that increase in value. In the light of this rule the master should inquire whether or not the improvements made by Byrne have increased the market value of the land, and, if they have done so, should allow to the defendant, as of the date of his report, the amount of that increase, not exceeding the difference between the amounts expended by Byrne for these purposes and the amount of the rents he received therefrom. He should also allow to the defendant the other items charged by him in his statement of account above

mentioned which he incurred or paid subsequent to June 2, 1892, and interest upon each item at 6 per cent. per annum from the time of its payment until the date of the master's report, and he should charge him with the amounts he collected for the right of way and from the sales of the land, with like interest to the same time. If the balance of Byrne's operating account when it is thus stated is in favor of Byrne, it should be paid to him out of the proceeds of the sales before the $6,117.42 and interest are paid. If that balance is against Byrne, it should be paid to the complainants out of the balance of the proceeds of the sales, if any, after the $6,117.42 and interest have been paid. If the proceeds of the sales are insufficient to pay the $6,117.42 and interest, the complainants should recover of Byrne the balance of the operating account against him, not exceeding an amount sufficient to complete the payment to them of the $6,117.42 and interest and one-half the unpaid balance, if any, of this operating account after the completion of that payment. The master should allow to the complainants the amounts paid by Jones for taxes and the other expenses of clearing the titles and preparing the land for market subsequent to June 2, 1892, which appear from the record to have been about $400, with interest on the respective items thereof from the dates of their payments to the date of his report, and this amount should be paid to the complainants out of the proceeds of the sales before the $6,117.42 and interest are paid. These suggestions regarding the account are made out of an abundance of caution, to avoid, if possible, another hearing of this case in this court.

The decree below directs the master to make an immediate sale of the land in Arkansas and to bring the money into court, and the inference is that he is to make this sale before the respective rights and interests of the parties can be adjudicated by the decision upon the exceptions, if any, to the master's report of the accounting. A court of chancery has the power to direct a sale of property before the accounting in cases which require both, and it is customary to do so in winding up insolvent estates and in other cases where the claimants to the proceeds are numerous, or for other reasons an early sale is especially desirable. But in the foreclosure of ordinary mortgages, the enforcement of private trusts, and the liquidation of claims to real estate, where the parties in interest are few and are all before the court, the usual and the preferable practice is to enter an interlocutory decree for the accounting, and to withhold the decree of sale until the respective interests of the parties have been fixed by the decision of the court upon the master's account. The latter practice is approved because it is beneficial to parties litigant, and they generally desire to know what their respective claims upon and interests in the property are before the sale, to the end that they may intelligently bid to protect them, and because the opposite practice requires two appeals to review questions which may, under this method, be reviewed by one. A decree for a sale of specific real estate before an accounting is a final decree and a subsequent decree of settlement of account is another, while a decree for an accounting to be completed before the decree of sale is an interlocutory decree which may be reviewed by an appeal from the

final decree of sale which embodies and follows it. Chase v. Driver, 34 C. C. A. 668, 672, 92 Fed. 780, 784, and cases there cited.

The court below was of the opinion that it had no jurisdiction to decree a sale of the land in Texas, and it dismissed the bill so far as it related to that property, on the authority of Boyce's Executors v. Grundy, 9 Pet. (U. S.) 275, 288, 9 L. Ed. 127. But this is a suit against a faithless trustee brought by a cestui que trust to execute the trust. That was a suit brought in Tennessee by a vendee against his vendor to rescind a contract concerning lands in Mississippi. The court rescinded the agreement. After this rescission it rendered a personal judgment for $2,100 against Robert Boyce, to whom the lands in Mississippi had been devised by the vendor in the rescinded contract, adjudged the decree for this $2,100 to be a lien upon those lands, and that they should be sold by its master to discharge that lien. The Supreme Court reversed the decree fixing this lien upon the Mississippi lands, and directing their sale upon the ground that neither a court of chancery nor a court of law may by its own power fix liens for the mere personal judgments it renders upon lands beyond its jurisdiction, or subject them to sales to satisfy such judgments.

But a court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested therein, for the reason that equity acts through the person. In Boyce v. Grundy the Supreme Court well said that the court below had no jurisdiction to decree a sale to be made of land lying in another state "by a master acting under its own authority." But a master directed by the court below to sell the land in Texas in the suit in hand will act, not by the authority of that court alone, but by the authority of the trust agreement of 1892. That agreement vested in the trustee, Byrne, the power to sell and convey the Texas land, and to apply the proceeds according to its terms, and when Byrne became faithless the court below had plenary power to substitute its master for him as trustee and to direct him to exercise all the powers originally vested in Byrne. Byrne is within the jurisdiction of that court, and it may lawfully require him to make the sale and conveyance as trustee, or it may appoint its master in his place who will be trustee pro hac vice. It may direct him to make the sale and conveyance requisite to completely execute the trust, and may require all the parties to this suit to confirm the title of the purchaser by subsequent deed. In cases of this nature the court is invested with all the powers of the parties to the agreement of trust of whom it has acquired jurisdiction, and it may by its decree effect any sale or conveyance of lands beyond its jurisdiction which the parties to the suit could make. In Earl of Kildare v. Sir Morrice Eustace and Fitzgerald, 1 Vern. 419, it was held that if a trustee live in England the Chancellor may enforce the trust although the lands lie in Ireland. In Toller v. Carteret, 2 Vern. 495, the defendant pleaded to a bill to foreclose a mortgage that the court was

without jurisdiction, because the mortgaged lands were a part of the duchy of Normandy and were under the jurisdiction of Guernsey, but the court overruled the plea, said that the defendant was served with process in England, and that equity acts in personam. In Penn v. Lord Baltimore, 1 Vesey, 444, specific performance of a contract for lands in North America was decreed in England. In Massie v. Watts, 6 Cranch (U. S.) 148, 157, 159, 3 L. Ed. 181, Watts brought a suit in Kentucky to enforce a trust in lands in Ohio, which had been created by an agreement made by Massie to locate the lands for the complainant's grantor and by his fraudulent location of them for himself. Chief Justice Marshall said:

"Was this cause, therefore, to be considered as involving a naked question of title, was it, for example, a contest between Watts and Powell, the jurisdiction of the Circuit Court of Kentucky would not be sustained. But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of mala fides practiced on the plaintiff, the principles of equity give a court jurisdiction, wherever the person may be found, and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction."

In Muller v. Dows, 94 U. S. 444, 450, 24 L. Ed. 207, and McElrath v. Pittsburg & Steubenville R. R. Co., 55 Pa. 189, a foreclosure and sale in one district of a railroad which extended into another was sustained. In the former case the Supreme Court said:

"The mortgagors here were within the jurisdiction of the court. So were the trustees of the mortgage. It was at the instance of the latter the master was ordered to make the sale. The court might have ordered the trustees to make it. The mortgagors who were foreclosed were enjoined against claiming property after the master's sale, and directed to make a deed to the purchaser in further assurance. And the court can direct the trustees to make a deed to the purchaser in confirmation of the sale. We cannot, therefore, declare void the decree which was made."

In Riverdale Mills v. Manufacturing Company, 198 U. S. 188, 194, 197, 25 Sup. Ct. 629, 49 L. Ed. 1008, in a suit in the Northern District of Georgia, a sale and conveyance of real estate, the larger part of which was situated in Alabama, was made under a decree of foreclosure of a trust deed thereon. The title under the decree to the property in Alabama was subsequently assailed by a suit in chancery in a state court in which the complainant alleged that this property was not advertised in the state of Alabama, nor was any sale or pretense of sale thereof conducted in that state. The United States Circuit Court enjoined the prosecution of that suit in the state court. The United States Circuit Court of Appeals reversed the order for the injunction. The Supreme Court said:

"It must also be remembered that the trust deed described the property conveyed as situated partly in Georgia and partly in Alabama. The federal court sitting in Georgia had jurisdiction to foreclose the trust deed,"—cited Muller v. Dows, supra, and affirmed the order for the injunction.

The contract which created the trust and specified its terms in the case in hand described the trust property as situated partly in Arkansas and partly in Texas, and the court below, which had jurisdiction of all the parties to that contract and of the trust it created,

is endowed with ample power to enforce the agreement and to execute the trust by a sale and conveyance of the property in Texas by the hands of its master and by requiring the parties to this suit to confirm the title of the purchaser by proper deeds of further assurance.

The decree below is accordingly reversed, and the case is remanded to the Circuit Court with instructions to enter a decree avoiding the two contracts of 1905, dismissing the cross-bill, appointing a master and directing him to hear evidence, to state and report speedily the account regarding the receipts and expenditures of the parties on account of the trust property upon a basis not inconsistent with that indicated in this opinion, and after the exceptions, if any, to that report have been ruled, then to enter a decree of sale of all the lands described in the contract of 1892 which have not been sold or lost to the parties, either in one tract, or in such smaller tracts as to the court shall seem fit; and to require the complainants and the defendant by that decree to make deeds to the purchaser or purchasers in confirmation of the master's conveyance or conveyances.