### CLARK et al. v. IOWA FRUIT CO. et al.

(Circuit Court, D. Missouri, S. E. D. January 20, 1911.)

No. 611.

1. JUDICIAL SALES (§ 53*)—VALIDITY—RETURN OF MASTER.

While it is the duty of a special master authorized by the court to make a sale of real estate to report the costs and expenses of executing the order of the court, his failure to do so does not affect the validity of the sale.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 104–107; Dec. Dig. § 53.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. COURTS (§ 18*)—POWERS OF COURT — SALE OF LAND BEYOND ITS JURISDIC-TION.**

While a court may not fix the lien of its decree upon lands in another jurisdiction and then order a sale of such lands by its master in satisfaction of that lien, it may enforce a contract lien, as the execution of a trust, where the parties are before it, and it can enforce the confirmation of the title by appropriate conveyance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 54; Dec. Dig. § 18.*]

**3. COURTS (§ 18*)—POWERS OF COURT— SALE OF LAND BEYOND ITS JURISDIC-TION.**

In a suit in equity in a federal court by stockholders for the winding up of the affairs of a corporation and distribution of its assets, consisting of land in another district of the state which was subject to a trust deed, where the bill alleged a conspiracy between the trustee and others to defraud the stockholders, and where the corporation, the trustee, and all parties in interest were before the court and consented thereto, the court had jurisdiction to sell the land by its master as a preliminary to the adjustment of the claims of the mortgage creditors, a portion of which was alleged by complainant to be fraudulent, and the distribution of the fund among the creditors and stockholders.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 54; Dec. Dig. § 18.*]

In Equity. Suit by Mary M. Clark and others against the Iowa Fruit Company and others. On exceptions to report of sale by special master. Sustained in part.

W. E. Mason and E. R. Mason, for complainants.
J. M. Whitaker and F. T. Hughes, for defendants.

VAN VALKENBURGH, District Judge. June 21, 1910, the complainant Mary M. Clark filed in this court her bill of complaint against the Iowa Fruit Company, a corporation, J. D. Brooks, trustee, and O. L. Meek, secretary and manager of said Iowa Fruit Company, alleging that complainant was the owner of 20 shares of the capital stock of said Iowa Fruit Company of the par value of $100; that said stock had been sold to her under misrepresentations as to the condition of said company; that the company was the owner of a fruit farm consisting of 500 acres more or less in Oregon county, Mo.; that the value thereof, as complainant believed, was $100,000; that the liabilities of said company were in the neighborhood of $6,892.92, a portion of which was secured by deed of trust on the property of date May 12, 1909, in which said deed of trust the defendant J. D. Brooks was trustee; that in the belief of complainant said deed of trust was owned by the defendant company; that the defendant O. L. Meek, with the other officers of said corporation, had conspired and confederated together to cheat and defraud complainant and other stockholders out of their holdings of stock in said company, and in furtherance thereof they had purposely defaulted in the payment of the interest upon the trust deed and had procured the said trustee to advertise said property for sale, which said sale was advertised to take place on the 22d day of June, 1910, unless enjoined by the process of this court; that a syndicate had been formed by said conspirators to purchase said property

at the sale; that this was being done for the sole purpose of defrauding complainants and other stockholders out of their just rights in the premises, and to render their stock absolutely worthless; that the defendant Meek, as secretary and general manager of said corporation, was wholly incompetent to manage the affairs of the corporation; that it was a part of said conspiracy to permit the property to go to waste, to neglect the fruit and allow it to become diseased and rotten and unfit for the market, and to prevent the property from bringing its fair value at the sale; that complainant had no information, and could secure no information, as to whether the note, which the trust deed was given to secure, represented a valid and subsisting indebtedness against the said Iowa Fruit Company, or what the amount due or secured by said trust deed was; that under proper management a loan could readily be secured upon the property to pay all the existing indebtedness and to support the property until a crop should mature. Complainant prayed that a writ of injunction issue enjoining the defendant Brooks from in any manner proceeding to sell the real estate above described, and from further advertising the same; that defendants make full and complete answer to all matters in the bill of complaint; that at a final hearing it be decreed that the affairs of the corporation be wound up and the property sold at either private or public sale under the direction of the court; that the proceeds thereof be ratably distributed to the stockholders, or a meeting of the stockholders be called under the direction of the court, and be given authority to put trustworthy officers in charge of the operation and management of the company; that pending said final hearing and meeting the court appoint some responsible person as receiver of the Iowa Fruit Company; that he be placed in possession thereof, with authority to control the operations and to negotiate a loan sufficient to pay the pressing indebtedness, together with interest and costs and taxes—in effect, a winding up of the affairs of the corporation and an accounting, between the stockholders with a sale of the property, if necessary, and a receiver pendente lite.

A subpœna in chancery was duly issued, together with a temporary restraining order, the latter returnable on the 30th day of June, 1910. On the latter date an amended bill was filed setting out more fully, among other things, the parties to the conspiracy and the names of certain of the stockholders; that a large proportion of said stock was issued without consideration, or with only a partial consideration, in violation of the statutes, and was therefore void. An additional prayer was added that a receiver be directed by the court to call upon the stockholders, under the provisions of section 961, Revised Statutes of Missouri, for payment of the balance due upon their unpaid stock subscriptions, and that after the period of 60 days the receiver should declare all that had been paid upon said stock subscriptions forfeited to the use of the company, and that the stock of each and every defaulting stockholder should be forfeited to the use of the said Iowa Fruit Company.

On the same day one William O. Nugent, as the owner of 50 shares of the stock of said company, intervened and asked to become a party complainant therein, which was granted. The defendants thereupon

filed their demurrer, and the defendant Brooks an answer disclaiming any interest, other than as trustee, in the subject-matter. Returns were also filed by the defendants O. L. Meek and the Iowa Fruit Company denying the allegations of the bill of complaint and setting up the amounts alleged to be due under the trust deed. Affidavits were filed on both sides in support of their several contentions, and on the said 30th day of June, 1910, Judge Dyer ordered that the defendants, or any of them, within two days from that date should enter into a bond in the sum of $7,000, payable to the complainants, conditioned that said defendants would pay all damages and costs which might be adjudged to be due complainants by reason of the sale of the mortgaged property described in said bill. This bond was filed by the defendant Iowa Fruit Company with one J. A. Lewis as surety, and thereupon the restraining order theretofore granted was vacated. Meantime the property had been readvertised for sale under the deed of trust and the date of sale fixed for July 13, 1910.

Thereupon the complainants made application to file an amended and substituted bill of complaint, and, in the absence of the regular judge from the district, applied to one of the circuit judges for a further hearing, with the result that the writer was designated to proceed to St. Louis for that purpose. July 8, 1910, the amended and substituted bill for injunction and for appointment of a receiver was filed, in which many of the allegations of the former bills were, in substance, restated. It was further alleged that, while it was claimed that there were $6,892.92 due under said deed of trust, a total of only $3,000 had been advanced thereunder; that the real estate constituted all the assets of the company; that the complainants could get no statement as to the condition of the company and were not sufficiently advised to be able to protect themselves in the premises; that the trustee was not acting in good faith, but was seeking to further the objects of the conspiracy charged; that the sum secured by the trust deed was not yet known, but had been declared due by reason of nonpayment of interest, the amount of which interest and the costs incurred in advertising the sale were not known; and that complainants desired to pay the same and stop the sale, but were unable to do so in the premises. It was further urged, though not specifically set out in the bill, that the bond theretofore given was inadequate by its terms to afford the protection intended. The granting of an injunction and the appointment of a receiver were again prayed for.

Upon these representations, and in view of the circumstances under which the matter had been reopened, leave was granted to file this amended and substituted bill and a further hearing granted. The defendants again appeared, by counsel, and filed their demurrer and a plea of adjudication, which were overruled. Thereupon an answer was filed denying the fraud charged, averring that the indebtedness claimed was due and unpaid, denying that the complainants were not fully advised as to the amount due, and that it was necessary for complainants to have time to investigate the books and condition of the company, averring that it would be to the great damage and irreparable injury of all parties concerned to delay the sale of the property; that if the property were sold now it would be sufficient to pay the debts,

and leave some amount to be distributed among the stockholders, but if delayed it would be so depreciated that it could not be sold for more than sufficient to pay off the mortgage indebtedness; that said property was rapidly depreciating in value and was liable to be destroyed by fire or in other ways, unless it could be placed in the hands of some party who would be able to care for and protect it; that defendants had made every effort to obtain money to pay the present indebtedness and to borrow money for the protection of the property, but had been unable to do so; agreeing that the corporation should be wound up and its property sold as averred in complainants' amended and substituted bills, the debts paid, and the money realized over and above the debts distributed ratably among the stockholders.

A number of affidavits were filed by both sides. Those filed by complainants tended to show that one Johnson, who owned a half interest in the note secured by the deed of trust, had never received any interest on his loan, but had never made any demand for foreclosure; that one B. F. Ketcham owned the other half and had full charge of the collection of the same; that the said Ketcham and certain stockholders in the Iowa Fruit Company desired to have the sale made; and that some of them contemplated bidding at such sale in order to protect themselves. On the other hand, affidavits were filed denying the existence of any such conspiracy as charged in the bill of complaint, and any acts in furtherance thereof as therein stated; that the indebtedness secured by the deed of trust was due and unpaid under its terms; that an earnest effort had been made to finance the company and to secure the money necessary to pay its indebtedness and place the property in a paying condition; but that this had been found to be impossible; that the property was depreciating daily and would not bring more than enough, if enough, to discharge the indebtedness if the sale was long postponed. The value of the property was variously estimated. In the course of the discussion it appeared that from $40 to $50 per acre might be considered an outside valuation. Its depreciated condition as a fruit farm rendered its value, as such, entirely problematical, while, if it were to be estimated as practically naked land, it could be considered not worth more than $10, $15, or at least $20 per acre. The tract of land composing the fruit farm undoubtedly formed the basis for the capitalization of the company, which was $100,000. This, as is generally the case in enterprises of this sort, contemplated its ultimate value as a productive fruit farm. The plans of its promoters had gone widely astray; the enterprise had been a failure from the start; large sums of money had been expended to no purpose; the crop had persistently failed; all agreed that it would take considerable money to place it even in fair condition for operation.

During the hearing it was suggested that at the session of Congress just closed, and prior to the filing of the original bill of complaint, Oregon county, Mo., in which the land is situated, had been detached from the Eastern judicial district of Missouri and placed in the Western district, without the jurisdiction of the court to which the suit had been brought. This added to the complications already existing. The court found itself with jurisdiction of the parties and of the original subject-matter of the suit, but without jurisdiction of the physical

property, which was the real substance of the litigation. It was conceded that a large amount of money was needed to carry out the objects of the corporation in whatever hands it might be placed. No source of supply was apparent. Left in its present condition the property was depreciating rapidly and the indebtedness was increasing; contract creditors were demanding payment and the benefit of their legal remedies. An early sale of the property was admittedly desirable, and both sides asked that the affairs of the corporation be wound up and its assets ratably distributed. The main point at issue was the manner and terms of the distribution; in other words, the accounting between the parties interested. The only fund available for such purpose was this real estate, which constituted the only asset of the corporation. The complainants were insisting upon the bad faith of the defendants, including the trustee in the deed of trust, under their sworn bills of complaint; defendants were contending for their legal rights as disclosed by the papers in the case.

Under these circumstances, the court indicated to counsel its inability to make any effective order in view of the controversial attitude of the parties. The land was without its jurisdiction. A receiver could not be appointed because there was nothing to which his appointment could attach, nor had he funds with which to effect any solution of the problem. The court could not go into the fruit-raising business, nor permit a receiver to incur indebtedness under such conditions; neither could it in equity and good conscience postpone indefinitely a sale so urgently demanded. But the complainants contended that this sale, if made, as contemplated, without the supervision of the court as to the amount of the bona fide indebtedness and the proper distribution of the proceeds, would result in irreparable injury to them. It was therefore suggested by the court, in view of the allegations of fraud and of bad faith in the execution of the trust involved and of the evident necessity for an immediate sale of the real estate, that, if all parties would consent thereto, the court would order the property to be sold by the trustee, as a special master, on the 1st day of September following: that said sale should be advertised once a week, for four consecutive weeks, in some newspaper of general circulation in Oregon county, Mo., one newspaper in Kansas City, Mo., and one newspaper in St. Louis, Mo.; that the master should pay the proceeds of said sale into the registry of the court, to be distributed subject to the further orders of the court in the premises, and should forthwith file with the court a statement of the amount due under the trust deed executed to him, showing the exact amounts paid by the beneficiaries under said trust deed, the dates of such payments, to whom paid, and in what manner. In this way it was contemplated that the sale should be postponed sufficiently that full notice thereof might be given in such manner as to insure the greatest publicity and opportunity for complainants and other parties interested to prepare themselves to protect their interests at such sale and to prevent the property from being sacrificed; meantime the amount of the indebtedness should be definitely known, and the proceeds should be deposited with the court ultimately to be distributed ratably in accordance with the accounting desired by both parties. The entire suggestion was made in the interest of a speedy

185 F.—39

sale of the property and a final adjustment of that feature of the controversy, leaving only the accounting between the parties to be effected. In these views of the court all acquiesced, and July 9, 1910, a consent order was entered in accordance therewith. Complainants filed a surety bond in the sum of $1,000 as security for costs incurred in the action.

Thereafter, on the 3d of August, 1910, the special master filed a report of the advances made and the amounts due under the deed of trust. On August 12th complainants filed exceptions thereto, and followed this on the 18th with a motion for a rule upon the master to make a further certified statement respecting such amounts, and for an order staying the sale which had been fixed for September 1, 1910, as aforesaid; and on that day Judge McPherson, sitting in the absence of Judge Dyer, the regular judge, entered an order requiring a further certified statement by the special master, and ordering the master not to advertise or sell the property described until such report. August 19, 1910, there was filed a stipulation, signed for all parties to the suit, changing the date of sale from September 1, 1910, as ordered by the court on July 9, 1910, to some date subsequent to September 28, 1910. On August 25th the master filed an amended report of the indebtedness secured by the deed of trust as required by the order of August 18th, and the sale was set for September 29, 1910. On September 27, 1910, the complainants filed a motion tendering to the master the sum of $450 to be used in paying the interest and costs up to that time upon the indebtedness secured by the deed of trust, and praying an order that the said special master should proceed no further in making said sale, but should postpone the same until the further order of the court. On the same day complainants renewed their application for a receiver by filing a petition therefor. Both motion and petition were denied by Judge Dyer, then sitting.

The sale was made as advertised on September 29th, and on the following day the special master filed his report that he had sold the property, in accordance with the orders of the court, to one John E. Whitaker, for the sum of $8,000, and asked that the same be approved. On the same day complainants were granted until October 5th to file their exceptions to the special master's report; such exceptions were filed on October 6th, and additional exceptions, by leave of court, on October 11, 1910, at which time the writer was again sitting in St. Louis. The complainants also filed an amendment to their former amended and substituted bill, in which, among other things, the happenings since the order of July 9th were set out from the view point of complainants. In this bill it was prayed that the sale of September 29th be set aside and that the master be required to comply more specifically with the order of the court and make a definite and certain finding as to the amount secured by the mortgage deed, to the end that the complainants and other stockholders similarly situated might pay off the mortgage debt and thus prevent the sale thereof. On October 12, 1910, by leave of court, the special master filed an amended report of sale, and thereupon the entire matter was submitted to the court upon the record, the exceptions, and the briefs and arguments of counsel.

The exceptions filed on October 6, 1910, objected to the confirmation of the sale because it was alleged to be in violation of the order of July 9, 1910, in that the master neglected and failed to file with the court a report fixing definitely the amount due from the defendant corporation to the beneficiaries under the trust deed, giving the dates of the advances made therein, to whom advanced, and how advanced and how paid; and that the order appointing the special master to make the sale was void, so far as the same authorized said master to make said sale, because the property so ordered to be sold was wholly beyond the jurisdiction of the court.

The additional exceptions filed October 11, 1910, further objected: (1) That the report did not show in a definite and certain manner that the master advertised the property for sale, as required by the order of court, in that he did not state what newspaper he published the advertisement in, nor that he advertised any particular land by description in said advertisement; (2) that the report did not show what land was sold; (3) that the report did not show that the master had found that it was most advantageous to sell the property as a whole, nor that if it had been offered in parcels it might not have brought a sum largely in excess of the amount produced by selling it as a whole; (4) that the property was not sold for cash, and that the master had not deposited the proceeds in the registry of the court to be distributed as further ordered; (5) that the master had exceeded his authority in attempting to establish claims, and distribute without authority of the court the funds arising from the sale of the property; (6) that the master had exceeded his authority in finding and reporting that the purchaser was and is a stockholder to the extent of 866 shares of the capital stock; (7) that the master has failed to make return of the costs and expenses in items attending the advertising and sale of the property; (8) that the report is indefinite and uncertain and conveys no information as to what the master did under said order and assumes a state of affairs which do not exist.

By his amended report of October 12, 1910, the special master has met exceptions 1, 2, and 3, of date October 11, 1910, in that the amended report names the newspapers in which the advertisement was published, and annexes copies of the advertisements containing the description of the land sold, and that the description is further set out in the amended report. The master also reports that he first offered the land separately in subdivisions and was unable to obtain bids for any one of said tracts or subdivisions thus separately offered; that thereupon he offered and sold the land in its entirety.

Exception 6 presents an immaterial objection, in that the incidental finding of the master that the purchaser was a stockholder to the extent of 866 shares of the capital stock is not binding upon the court, and has no bearing upon the validity of the sale.

Exception 7 is immaterial to affect the sale. It is, however, the duty of the master to report the costs and expenses of executing the order of the court, all of which are to be considered and adjusted in making allowances therefor.

It is not perceived wherein the report is so indefinite and uncertain as to render it vulnerable to exception 8, in so far as the confirmation

of the sale is concerned. Details which may become necessary for the information of the court in making a final adjustment can be at any time supplied.

Respecting exceptions 4 and 5, of date October 11, 1910, it is to be observed that the master reports a cash sale, and that he has received in cash the 25 per cent. provided by the order. No balance was, of course, required to be deposited before the confirmation. The master, however, has recommended that certain evidences of indebtedness in lieu of cash be accepted for the balance of the cash payment, including dividends upon the shares of stock of the purchaser to the number of 866 according to his information. Such a proceeding would not conform with the object of the sale as recited in the order, which was that the proceeds of said sale should be paid into the registry of the court, subject to the further order of the court in the premises. The entire proceeds of the sale in advance of the accounting was because of the deterioration incidental to delay. The proceeds of that sale were to be paid into the court, and the credits and debits were thereafter to be marshaled and adjudicated, and a ratable distribution made in conformity with the findings of the court after proper investigation and hearing. It was therefore contemplated that the entire proceeds of the sale, in cash, should be paid into court without offset of any nature whatsoever, some of the very matters in litigation being the amount of the indebtedness and the validity of the claims to be asserted against the fund. It would therefore be the duty of the master to collect the entire amount of the purchase price in cash and deposit it in the registry of the court; thereafter to be distributed in such manner as the court may find to be just and equitable.

This brings us to the consideration of the two exceptions originally filed October 6, 1910. Respecting the first, it should be sufficient to repeat that the master filed a report assuming to fix the amounts due under the trust deed on the 3d day of August, 1910. To this report complainants excepted on August 12th, and on August 13th an order was made for a further report. A stipulation was then entered into for a postponed date of sale. August 25, 1910, the master did file an amended itemized report of the amounts alleged to be due, the dates of the items, and on what account advanced. This report, while not conclusive in a final adjudication, seems sufficiently to comply with the court's order. At any rate, the complainants appear to have filed no exceptions thereto until on September 27th—but two days before the date fixed for the sale—they filed what purports to be a tender of $450 to be used in paying the interest and costs up to that time under said deed of trust, and a prayer that the sale be stayed. It would seem therefore that the report filed had been sufficient to enable complainants to make the necessary computation for that purpose. This evidently was the view taken by Judge Dyer, because this application of complainants was denied and the sale was made.

This brings me to the consideration of the second exception to the report filed October 6, 1910, to wit, that the order of sale was void because the property was wholly beyond the jurisdiction of the court. This is, in fact, the only exception urged which strikes at the validity of the entire proceeding.

The reasons for ordering the sale of this property at the time and in the manner directed have heretofore been set out in detail. That order was made by consent of all parties, and would not have been made under any other circumstances. It was made in furtherance of the objects desired by the complainants and of the emergencies shown to exist at the hearing which were then practically conceded. The court is of opinion that the authority to make the sale existed under the pleadings in view of the relief sought and the consent of all parties who were confessedly before the court and subject to its jurisdiction. The case seems to fall within the reasoning of Judge Sanborn's opinion in Byrne v. Jones et al., 159 Fed. 321, 90 C. C. A. 101. It is there said:

"The decree below directs the master to make an immediate sale of the land in Arkansas and to bring the money into court, and the inference is that he is to make this sale before the respective rights and interests of the parties can be adjudicated by the decision upon the exceptions, if any, to the master's report of the accounting. A court of chancery has the power to direct a sale of property before the accounting in cases which require both, and it is customary to do so in winding up insolvent estates and in other cases where the claimants to the proceeds are numerous, or for other reasons an early sale is especially desirable.

"A court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested therein, for the reason that equity acts through the person. *  *  *

"That agreement vested in the trustee, Byrne, the power to sell and convey the Texas land, and to apply the proceeds according to its terms, and when Byrne became faithless the court below had plenary power to substitute its master for him as trustee and to direct him to exercise all the powers originally vested in Byrne. Byrne is within the jurisdiction of that court, and it may lawfully require him to make the sale and conveyance as trustee, or it may appoint its master in his place who will be trustee pro hac vice. It may direct him to make the sale and conveyance requisite to completely execute the trust, and may require all the parties to this suit to confirm the title of the purchaser by subsequent deed. In cases of this nature the court is invested with all the powers of the parties to the agreement of trust of whom it has acquired jurisdiction, and it may by its decree effect any sale or conveyance of lands beyond its jurisdiction which the parties to the suit could make."

In Muller v. Dows, 94 U. S. 444–450, 24 L. Ed. 207, the Supreme Court said:

"The mortgagors here are within the jurisdiction of the court. So were the trustees of the mortgage. It was at the instance of the latter the master was ordered to make the sale. The court might have ordered the trustees to make it. The mortgagors who were foreclosed were enjoined against claiming property after the master's sale, and directed to make a deed to the purchaser in further assurance. And the court can direct the trustee to make a deed to the purchaser in confirmation of the sale. We cannot, therefore, declare void the decree which was made."

The important distinction is that a court may not fix the lien of its decrees upon lands in another jurisdiction and then order a sale of such lands by its master in satisfaction of that lien, but it may enforce a contract lien, to wit, the execution of a trust where the parties are before it and where it can enforce the confirmation of the

title by appropriate conveyance. Boyce's Executors v. Grundy, 9 Pet. 275, 9 L. Ed. 127, Byrne v. Jones, and Muller v. Dows, supra. Here the Iowa Fruit Company, the mortgagor and owner of the land, was before the court; so also, was the trustee. It is charged that this trustee is unfaithful, is a party to a conspiracy to defraud, and that if he were to make the sale under the terms of the deed of trust, without the supervisions of the court, an irreparable injury would result from an improper recognition of invalid indebtedness and an unwarranted distribution of the proceeds of the sale to those not entitled thereto. The sale has been made under the order of the court, the price appears to be a fair one under all the circumstances of the case, at least, full and fair notice was given, and the complainants had 2½ months within which to perfect arrangements to protect their interest by bidding at that sale, or by urging others to become interested therein. The purchaser comes before the court, through the trustee, and asks confirmation of the sale. The defendant corporation, the title holder, is before the court, and not only may be required, but is willing, to make conveyance in confirmation of the sale. No one, on this ground at least, can complain or question the power of the court to vest a good title in the purchaser.

This order was made as the only relief which the court conceived it to be within its power to grant under the pleadings and the facts developed at the hearing. To this action of the court complainants formally consented. An inspection of the record discloses that this may have been done with a mental reservation, because continuously from August 3d complainants made filings to postpone and prevent the sale and to compel the court, against its deliberate convictions and repeated refusals, to assume jurisdiction of this matter through the intervention of a receiver. The one exception to this course of conduct is found in the stipulation of August 19th, in which complainants again consented to a sale under this order, but at a later date. It is not felt that the exception under consideration properly observes the understanding reached by the court and opposing counsel when the order of July 9th was made.

It results, from what has been said, that exceptions 1 and 2, filed October 6, 1910, and exceptions 1, 2, 3, 6, 7, and 8, filed October 11, 1910, will be overruled; exceptions 4 and 5, filed October 11, 1910, will be sustained to the extent that the special master will be required to collect the balance of the purchase price in cash and deposit the same in the registry of the court to be distributed subject to the further order of the court in the premises, after an accounting has been had and all claims to the fund have been judicially established and determined in this proceeding, and that upon the deposit of the moneys, as aforesaid, said sale will be confirmed, and the master will be directed to make the necessary conveyance or conveyances to the purchaser. Further, that the defendant, Iowa Fruit Company, by deed properly authorized and executed, confirm to the purchaser the title to the premises sold.

Should the purchaser fail or refuse, within 10 days of notice of the order made herein, or within such further time as may be allowed by the court, to pay over to the master the balance of the purchase

price bid at such sale, the master will pay into the registry of this court the $2,000 now in his hands and deposited with him by the purchaser, and the same shall be forfeited as contemplated by the order of sale requiring 25 per cent. of the amount of the bid to be deposited in the hands of the master to guarantee the bona fides of the offer made.