LONG *v.* EARLE.

1. TRUSTS—ACCOUNTING—EVIDENCE—BURDEN OF PROOF.

In proceedings for an accounting by a trustee, where the trusteeship is admitted or established, it is the duty of the trustee to account for trust funds received by him, and the burden of proof is upon him to establish the correctness of the account.

2. EVIDENCE—DESTRUCTION OF DOCUMENTS—PRESUMPTIONS.

The wilful destruction or suppression of documentary evidence gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts.

3. SAME—WILFUL DESTRUCTION OF EVIDENCE—INFERENCES—PRESUMPTIONS.

One who wilfully destroys documentary evidence of a controversy in which he is interested cannot complain if courts give such act the inferences which naturally follow it or the unfavorable presumptions that naturally arise.

4. SAME—BEST EVIDENCE—DESTRUCTION—SUBSTITUTION—FRAUD—REBUTTABLE PRESUMPTIONS.

Production of the best evidence is required to prevent fraud and when such evidence is withheld or destroyed by party in possession of it and inferior evidence sought to be substituted, presumption arises, in the absence of full explanation of the circumstances, that is conclusive of a fraudulent design and secondary or inferior evidence is rejected.

5. TRUSTS—ACCOUNTING—DESTRUCTION OF EVIDENCE—FINDING OF COURT.

In suit against trustee for accounting of trust funds, finding that he embezzled and converted funds to his own use, which belonged to beneficiaries, *held,* justified where, after commencement of suit, a large number of checks were destroyed, particularly those relating to construction of house upon land in another county to which, it is claimed, trust funds were traceable.

6. SAME—ACCOUNTING—HUSBAND AND WIFE—TENANCY BY ENTIRETY —HOMESTEAD—PARTIES.

In beneficiaries' suit for accounting by trustee, his wife *held*, a proper party defendant where part of funds converted are claimed to have been used by him in construction of house on land held by them as tenants by the entirety and occupied as a homestead.

7. HUSBAND AND WIFE—TENANCY BY ENTIRETY—NATURE OF ESTATE.

One tenant by the entirety has no interest separable from that of the other, has nothing to convey or to which he alone can attach a lien or other incumbrance without consent of the other as each is vested with an entire title.

8. FRAUDULENT CONVEYANCES—TENANCY BY ENTIRETY.

Estates in entirety cannot be created at the expense of creditors and held in fraud of the latter's right although in the absence of such fraud the estate would not be subject to the husband's debts.

9. TRUSTS—HOMESTEAD—TITLE OF PROPERTY PURCHASED WITH TRUST FUNDS.

Equitable title of property occupied by trustee and his wife as homestead which was purchased with misapplied trust funds is in beneficiaries of the trust and he is trustee *ex maleficio* thereof, the very claim of a homestead in property so purchased and paid for being in itself a breach of the trust.

10. HOMESTEAD—CONVERSION OF TRUST FUNDS.

It is not contemplated that a homestead may be created and maintained with stolen or embezzled property, or with property wrongfully converted which rightfully belonged to beneficiaries of a trust fund, hence homestead so created from funds directly traceable thereto is not exempt from properly invoked jurisdiction of court of equity even though legal title is in trustee and his wife as tenants by the entirety.

11. TRUSTS—EQUITY—JURISDICTION—TRACING CONVERTED FUNDS.

Circuit court in chancery of county having jurisdiction of trust and parties has jurisdiction to follow funds embezzled and converted by trustee wherever they may be found and into whatever property they may have been converted and fasten the trust upon that property, even though it be house and land in another county, occupied by trustee and wife as homestead, and title thereto held by them as tenants by the entirety.

12. Same—Jurisdiction of Action Against Trustee.
    Generally, trustee may be sued wherever he can be found, where suit is to enforce a trust on both personal and real property.

13. Equity—Land Beyond Its Jurisdiction—Trusts—Parties.
    A court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise in suits to execute trusts whenever it has acquired jurisdiction of the persons of the parties interested in the real estate, because equity acts through the person.

14. Same—Retention of Jurisdiction.
    A court of equity, having acquired jurisdiction upon any well-settled ground, will ordinarily retain such jurisdiction to grant complete relief.

15. Trusts—Husband and Wife—Homestead—Wife as Volunteer.
    Trustee's wife who is not shown to have contributed toward real estate held by her and her husband as tenants by the entirety and occupied as a homestead *held*, a mere volunteer with respect thereto where there is evidence tending to show trust funds were illegally invested therein.

16. Same—Volunteers—Tracing Trust Property.
    Trust property, transferred by trustee otherwise than in the course of the trust, or which has devolved from such trustee to a third person who is a mere volunteer, is held by such volunteer subject to the same trust as existed before, thus enabling beneficiaries to follow trust property as long as it may be identified into hands of all subsequent holders who are not in the position of *bona fide* purchasers for value without notice.

17. Same—Tracing Trust Property Misapplied by Trustee.
    When property held in trust to invest in a particular way or for particular persons is misapplied by the trustee and converted into different property, the property can be followed wherever it can be traced through transformations, and will be subject, when found, in its new form, to the rights of the original owner or *cestui que trust.*

18. Same—Misapplication—Beneficial Interest of Cestui.
    Trust funds which have been invested by trustee through misapplication thereof furnish consideration for beneficial interest of *cestui que trust* in the investment, the right being a property right and not one created by court of equity in tracing the misapplied funds.

19. Same—Misapplied Trust Funds—Title.

Property right of *cestui que trust* in property in which misapplied trust funds have been invested entitles him to seizure thereof irrespective of whether it has increased or decreased in value, providing title is taken in the name of any other person except a *bona fide* holder for value.

20. Same—Commingled Funds.

If the trustee commingles trust funds with his own, the entire commingled property will be treated as subject to the trust to the extent necessary to make good the claim of the *cestui que trust* to funds traced to, and still found commingled in, the common fund, except in so far as the trustee may be able to distinguish and separate that which is his own.

21. Same—Parties—Beneficiaries Not Joined.

In suit by some of a number of beneficiaries in a trust for investing in certain Florida real estate, plaintiffs, who were successful in tracing and recovering at least some of the funds misapplied by the trustee, *held*, entitled to a share thereof as measured by their contributions, other beneficiaries not parties being required to bear burdens equally and ratably according to their respective interests.

22. Action—Accounting by Trustee—Nonjoinder of Beneficiaries as Parties.

That certain beneficiaries of an investment trust were not joined as parties plaintiff in suit against trustee for accounting *held*, insufficient reason for dismissal of suit in view of statute providing that no action at law or in equity shall be defeated by nonjoinder or misjoinder of parties and permitting addition or dropping of parties at any stage of a cause (3 Comp. Laws 1929, § 14021).

23. Accounting—Affirmative Relief—Pleading.

Defendant who filed cross-bill against other defendants in suit against trustee and others for an accounting *held*, properly granted a lien on property into which trust funds were traced where evidence showed balance due cross-plaintiff, notwithstanding no specific relief by way of having a lien impressed upon such property was prayed in his cross-bill.

24. TRUSTS—ACCOUNTING—BURDEN OF PROOF—DESTRUCTION OF REC-
ORDS.

Decree for plaintiff beneficiaries against trustee in suit for ac-
counting is affirmed notwithstanding some things may not be
clearly established, since burden of proof, where trusteeship
was admitted, was upon trustee to disclose fully and fairly and
he destroyed many records directly or indirectly involved.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted April 24, 1936. (Docket No. 120, Cal-
endar No. 38,930.) Decided November 9, 1936.

Bill by F. Earle Long and others against Herbert
R. Earle and wife for a receiver, accounting, re-
moval of trustee and other relief. Supplemental
bill joining Charles H. Bennett and another as par-
ties defendant. Cross-bill by Charles H. Bennett
against Herbert R. Earle for an accounting, appoint-
ment of receiver, removal of trustee and other relief.
From decree giving plaintiffs and cross-plaintiff a
lien on property of defendants Earle, they appeal.
Affirmed.

*Emmons, Oren, Sleeper & Krise* (*David A.
Howell,* of counsel), for plaintiffs.

*Sempliner, Dewey, Stanton & Honigman* (*Thomas
L. Poindexter,* of counsel), for defendants Earle.

*Harvey S. Durand,* for defendant and cross-plain-
tiff Bennett.

POTTER, J. This controversy grows out of the pur-
chase, improvement and sale of property on Merritt
island, opposite the city of Melbourne, Florida.
Prior to April 27, 1922, Ernest Kouwen-Hoven and
wife had acquired most of the land in controversy
and platted it as Indialantic-by-the-Sea, and owned

and controlled the highway toll bridge from the island to Melbourne. The plat as it existed at the time Herbert R. Earle and his associates became interested therein included Indialantic plat, with reservations for the Indian river bridge, board walk, golf course, and other proposed improvements. Its value consisted in its natural location and desirability for recreational and residential purposes, and it was thought it had, in addition, a reasonably certain and predictable speculative value which would be enhanced by the transformation and development of the property.

Defendant Herbert R. Earle and wife resided in Oakland county, but he was engaged in business in Detroit. There is some suggestion he was familiar with real estate transactions and in the incipient stages of this matter some of plaintiffs had advanced to him substantial sums of money for use by a contemplated real estate syndicate in Wayne county.

Defendant Herbert R. Earle and others became interested in Indialantic-by-the-Sea and, April 27, 1922, he purchased of Kouwen-Hoven and wife on land contract the original Indialantic property for $200,000, payable $15,000 down and the balance in instalments. The property was taken subject to certain real estate mortgages, and the purchaser assumed and agreed to pay the sum of $27,600 in bridge bonds and to protect those who had already purchased lots in the plat by the observation of the restrictions and the making of promised improvements. Upon the execution of the contract, the defendant Herbert R. Earle took possession of the purchased property. Plaintiffs were or subsequently became interested in the project. May 25, 1923, defendant Herbert R. Earle executed a declaration of trust and agreement in relation to the property,

which, after reciting the acquisition of Indialantic-by-the-Sea as a joint venture and the making of large payments thereon by him and the sale of certain lands and the collection of moneys therefor, as representative of the joint adventurers, acknowledged he held in trust all the right, title and interest in and to the premises purchased by the land contract hereinbefore mentioned, subject to the sales which had been made, the proceeds of which were held in trust. There were many other stipulations in connection therewith among which was that defendant Herbert R. Earle was, as trustee, to improve, subdivide and sell Indialantic-by-the-Sea, and desired also to protect the beneficiaries of the trust from his death or inability to act. In connection with this instrument, defendant Earle executed and delivered an assignment of his vendee's interest in the contract of purchase and of his interest as vendor in all contracts of sale of lots, and also executed and delivered a deed of all of the real estate involved to the Security Trust Company, of Detroit, to become effective in case he, as trustee, should so indicate or become subject to legal disability, or upon his death. The Security Trust Company was in general, in case it should be substituted for the defendant Herbert R. Earle as trustee, authorized to carry out and perform in all particulars the trust which had been declared.

The affairs of the joint adventure apparently prospered in the boom days of Florida real estate but eventually the boom collapsed, values deflated, property depreciated in value, and conditions among the beneficiaries of the trust were none too good. With the collapse of the stock market and consequent deflation of credit here, the beneficiaries of this trust sought to find out what they had to represent their

investment. Dissatisfaction with the results of the joint adventure were rumored and in October, 1928, many plaintiffs filed a bill against the defendant Herbert R. Earle for his removal as trustee, an accounting, an injunction restraining him from disposing of any more of the property or assets of the trust, and for other purposes. October 23, 1928, an order was entered appointing a custodian of the property and directing an audit of the affairs of the trust. November 28, 1930, an interlocutory decree was entered reciting that Herbert R. Earle, defendant, had resigned as trustee; that plaintiffs held a majority in interest of the outstanding certificates of beneficial interest in the trust, and their rights and interests were such as to make them properly representative of all such certificates and the holders thereof so the suit might proceed to be determined as if every holder of such certificates was in court in person by due service of process, and with like force and effect as to each and every certificate holder; that the beneficiaries of the trust, the holders of the outstanding trust certificates, had caused a corporation to be formed under the laws of Florida, under the name of "Indialantic Corporation," to which they desired all of the assets of the trust to be conveyed; and ordering that defendant Herbert R. Earle and Florence C. Earle, his wife, execute and deliver to the Indialantic Corporation such deeds, conveyances, assignments and other transfers as were necessary to vest the absolute title and ownership of the property and assets, real, personal or mixed, of the trust in the corporation. The decree removed the defendant Herbert R. Earle as trustee of the trust and divested him of all authority and control in connection with the Indialantic Corporation, and provided that upon the execution of

proper conveyances by defendant Herbert R. Earle and wife and the Detroit & Security Trust Company, successor to Security Trust Company, such corporation was to become the absolute owner of the trust property. It provided the Detroit & Security Trust Company should thereupon file its account and be discharged. It provided the court should retain jurisdiction for an accounting between the plaintiffs and defendant Earle and wife in relation to the trust, and also that there should be an accounting between the parties and Charles H. Bennett to the end that each of said parties should be credited and charged with the proper items and should account for all the property which belonged to the trust. The court reserved jurisdiction over all the parties to make further adjudication in relation to the accounting and for the purpose of modifying the temporary decree. There were other reservations of jurisdiction in the decree. February 16, 1929, an amended bill of complaint was filed joining Florence C. Earle, wife of the defendant Herbert R. Earle, as defendant. An audit of the books of the trust was made by Price, Waterhouse & Company, which audit was reported, and July 7, 1930, a petition for leave to file an amended and supplemental bill of complaint was filed and on the same date an amended bill of complaint was filed by all plaintiffs herein against Herbert R. Earle, Florence C. Earle, his wife, Charles H. Bennett, and Detroit & Security Trust Company as defendants. Answers were filed by all of the defendants other than Charles H. Bennett who filed an answer in the nature of a cross-bill. The case being placed at issue came on to be heard before the circuit court for Wayne county and the trial court filed an opinion therein and a decree was entered based thereon. This decree found the

amount due from Herbert R. Earle, as trustee, to be the sum of $233,725 principal and $98,154.73 interest. It also fixed liens upon the real estate standing in the name of Herbert R. Earle and Florence C. Earle, his wife, and held by them as tenants by the entirety and used and occupied by them as a homestead in Oakland county, as follows: lien for plaintiffs in the amount of $16,908.27; lien in favor of Charles H. Bennett in the sum of $62,424.88. Such liens were to be of equal rank.

Defendant Florence C. Earle made a motion for a rehearing and a motion to amend the decree filed herein, and by such motions claimed she was made a party to the original bill of complaint only for the reason plaintiffs alleged her signature was necessary to effect a proper conveyance of the real estate in Florida; that in pursuance of such decree, she had deeded over each and every parcel of such real estate belonging to the trust of which her husband, Herbert R. Earle, was trustee; that the only relief asked against her in the amended bill of complaint was that she account for the funds of the trust in her hands, and under the pleadings and proofs there was no showing she ever had any of the trust funds in her hands, or any control over any of the funds or property belonging to the trust; that no decree for an accounting would lie against her unless a showing was made that funds of the trust came into her possession; that the court was without jurisdiction to fasten a lien upon the real estate in Oakland county standing in the names of defendants Herbert R. Earle and Florence C. Earle, that the title to this property was local in its nature and not within the jurisdiction of the circuit court for Wayne county in chancery but expressly placed by statute in the circuit court for the county of Oakland; and though

the court in Wayne county might have jurisdiction over the parties for an accounting, that would not give it jurisdiction over the rights of the defendants Earle to the real estate situated in Oakland county.

There was a motion for rehearing and to amend the decree upon the part of Herbert R. Earle in which he raised the question he was never indebted to plaintiffs, but his indebtedness was to the trust and not to plaintiffs; and that plaintiffs were not the only holders of beneficial certificates outstanding representing contributions to the trust here involved.

All of these objections made upon the part of the defendants Earle were overruled by the trial court, and from his decree defendants Herbert R. Earle and Florence C. Earle appeal.

(1) In this case the existence of the trust relation is admitted. And where the trusteeship is admitted or established, the duty rests upon the trustee to account and the burden of proof is upon him to establish the correctness of the account. *Grund* v. *First National Bank of Petoskey,* 209 Mich. 613.

(2) A very large amount of business was transacted by the defendant Herbert R. Earle in connection with the Florida real estate in buying, selling, making improvements, and carrying on and transacting the business of the trust. Large profits were made. It is claimed, and the court found, defendant Herbert R. Earle embezzled and fraudulently converted to his own use $233,725 belonging to the beneficiaries of the trust and after the institution of the suit in this case a large number of checks were destroyed, particularly those checks relating to the construction of the house upon the real estate acquired in Oakland county upon which plaintiffs and defendant Charles H. Bennett were given liens.

"The wilful destruction, suppression, alteration or fabrication of documentary evidence properly gives rise to the presumption that the documents, if produced, would be injurious to the one who has thus hindered the investigation of the facts." Jones on Evidence (2d Ed.), § 18.

"One who wilfully destroys documentary evidence of a controversy in which he is interested cannot complain if courts give such act the inferences which naturally follow it, or the unfavorable presumptions that naturally arise." *Pitcher* v. *Rogers' Estate,* 199 Mich. 114.

"The object of the rule of law which requires the production of the best evidence of which the facts sought to be established are susceptible is the prevention of fraud; for, if a party is in possession of this evidence, and withholds it, and seeks to substitute inferior evidence in its place, the presumption naturally arises that the better evidence is withheld for fraudulent purposes, which its production would expose and defeat. When it appears that this better evidence has been voluntarily and deliberately destroyed, the same presumption arises, and, unless met and overcome by a full explanation of the circumstances, it becomes conclusive of a fraudulent design, and all secondary or inferior evidence is rejected." *Davis* v. *Teachout's Estate,* 126 Mich. 135 (86 Am. St. Rep. 531).

In *Brandt* v. *C. F. Smith & Co.,* 242 Mich. 217, 222, it is said:

"Failure to produce evidence within a party's control raises the presumption that, if produced, it would operate against him; and every intendment will be in favor of the opposite party."

(3) It is contended upon the part of the defendant Florence C. Earle the decree should not operate as against her for the reason none of the trust funds

came into her hands; and, none of the trust funds
having come into her hands, she cannot be held to
account for what she did not receive.

No accounting as such is sought against Mrs.
Earle and it is not claimed she received money from
the trust. What is claimed is that the funds belong-
ing to the trust were embezzled and fraudulently
converted by the defendant Herbert R. Earle and
invested in real estate in Oakland county, the title to
which was taken in the name of himself and the de-
fendant Florence C. Earle as tenants by the entirety,
which premises are used and occupied by them at the
present time as a homestead.

(4) It is claimed defendants Herbert R. Earle
and Florence C. Earle having acquired the real
estate in Oakland county as tenants by the entirety,
it may not be reached in this proceeding.

It is well settled under the law of this State that
one tenant by the entirety has no interest separable
from that of the other, has nothing to convey or
mortgage or to which he alone can attach a lien.
Neither can incumber real estate held as tenants by
the entirety without the consent of the other. Each
is vested with an entire title and as against the one
who attempts alone to convey or incumber such real
estate, the other has an absolute title. *Naylor* v.
*Minock,* 96 Mich. 182 (35 Am. St. Rep. 595) ; *Hubert*
v. *Traeder,* 139 Mich. 69; *Bauer* v. *Long,* 147 Mich.
351 (118 Am. St. Rep. 552, 11 Ann. Cas. 86) ; *Agar*
v. *Streeter,* 183 Mich. 600 (L. R. A. 1915 D, 196, Ann.
Cas. 1916 E, 518) ; *Burman* v. *Ewald,* 192 Mich. 293;
*Nurmi* v. *Beardsley,* 275 Mich. 328. Plaintiffs con-
cede the real estate in Oakland county, if it had been
purchased and paid for by the defendants Earle and
held by them as tenants by the entirety, in the ab-
sence of fraud, would be beyond the reach of credi-

tors. But it is contended a tenancy by the entirety which in its creation hinders, delays or defrauds creditors is not invulnerable from attack by such defrauded creditors.

"It would be a gross injustice to permit debtors to apply moneys which should be applied to the payment of their debts to the creation of an estate which would be beyond the reach of their creditors. Had the entire estate been placed in the wife's name, there could have been no question but that the same would be regarded as fraudulent under the statute, and it is no less a fraud upon creditors because the title has been taken in the name of the defendants jointly. In other words, estates in entirety cannot be created at the expense of creditors, and held in fraud of the latter's right." *Newlove* v. *Callaghan,* 86 Mich. 297 (24 Am. St. Rep. 123).

This rule has been frequently reaffirmed. *Foster* v. *Whelpley,* 123 Mich. 350; *Lemerise* v. *Robinson,* 241 Mich. 528.

Where a husband used trust property and invested it in real estate taking a title to himself and wife as tenants by the entirety, and he died, and she, as survivor, took title thereto and sold the property on an executory contract presumably for part cash and part on time payments, "she then held, either in cash or in an interest in the contract, property equitably belonging to plaintiff, for which she had paid no consideration and to which she had no right, and upon which she had no equitable claim." *Watson* v. *Wagner,* 202 Mich. 397, 403.

(5) It is contended the real estate in Oakland county is a homestead.

The equitable title to the trust property was in the beneficiaries of the trust, and so far as the interest of the defendant Herbert R. Earle in the real estate in Oakland county is concerned, he must,

under the findings of the trial court, be held to be a trustee *ex maleficio*. Defendants Earle cannot shield themselves behind the claim the real estate acquired in Oakland county constitutes a homestead. As to ordinary creditors, the investment of funds in a homestead may be protected even though such creditors are prevented from realizing upon their *bona fide* claims against the husband. *Kleinert* v. *Lefkowitz*, 271 Mich. 79. We are not dealing with creditors of Herbert R. Earle and Florence C. Earle, but with the property of the beneficiaries of the trust which is sought to be followed by such beneficiaries into the title of the real estate taken in the name of the defendants Herbert R. Earle and Florence C. Earle. The theory of plaintiff's bill of complaint is that though the nominal title of the Earle real estate in Oakland county is in them, the beneficial title is in the beneficiaries of the trust whose money was wrongfully embezzled and converted to his own use by the defendant Herbert R. Earle and used to buy and pay for such real estate. It is well settled both upon principle and authority that one who embezzles or otherwise misappropriates trust funds cannot get away with the embezzlement or misappropriation by investing the money embezzled or misappropriated, which belonged to the beneficiaries of a trust, in a homestead. *American Railway Express Co.* v. *Houle,* 169 Minn. 209 (210 N. W. 889, 48 A. L. R. 1266); *Shearer* v. *Barnes,* 118 Minn. 179 (136 N. W. 861); *Warsco* v. *Oshkosh Savings & Trust Co.,* 190 Wis. 87 (208 N. W. 886, 47 A. L. R. 366); *Preston* v. *Moore,* 133 Tenn. 247 (180 S. W. 320, L. R. A. 1916 C, 578). The constructive trust in the property in Oakland county in favor of the beneficiaries of the trust here under consideration is entirely unaffected by the mode in which it was handled. As pointed out in *Shearer* v. *Barnes, supra,* the very claim of a home-

stead in this property is a breach of the trust which arose out of the manner of its acquisition. We are not here dealing with creditors of Herbert R. Earle and Florence C. Earle, but with money or property which belonged to the beneficiaries of the trust embezzled or fraudulently converted by the defendant Herbert R. Earle, and it was never contemplated or intended by the Constitution and laws of this State that a homestead could be created and maintained with stolen or embezzled property, or with property wrongfully converted which rightfully belonged to the beneficiaries of a trust fund.

"If this were so, the statute exempting a homestead, instead of promoting the public welfare, would operate as an immoral and baneful influence, undermining and destroying the fundamental principles of government." *Warsco* v. *Oshkosh Savings & Trust Co., supra,* 94.

A homestead established from the proceeds of crime, or the misappropriation of the property of others, when the proceeds of such wrongful act upon the part of the trustee are directly traceable to the homestead, cannot be held exempt from the reach of the arm of a court of equity whose jurisdiction has been properly invoked by the beneficiaries of the trust fund which has been embezzled or fraudulently converted and so invested. And the fact the title to the real estate in Oakland county, if so acquired, was taken by the defendants Herbert R. Earle and Florence C. Earle as tenants by the entirety does not place it beyond the reach of the powers of a court of equity.

(6) It is contended the circuit court of Wayne county in chancery has no jurisdiction of the real estate held by defendants as tenants by the entirety used as a homestead and located in Oakland county.

Reliance is placed upon *Godfrey* v. *White,* 43 Mich. 171; *Krolik* v. *Bulkley,* 58 Mich. 407; *Chapin* v. *Montcalm Circuit Judge,* 104 Mich. 232; *Dunlap* v. *Byers,* 110 Mich. 109; *Wipfler* v. *Warren,* 163 Mich. 189; *Buck* v. *Lockwood,* 193 Mich. 242; *Reed* v. *Bird,* 239 Mich. 32; *Orloff* v. *Morehead Manfg. Co.,* 273 Mich. 62. On the other hand, the plaintiffs rely upon the same cases to support their contention the circuit court of Wayne county had jurisdiction to impress a trust upon the real estate in Oakland county.

Where real estate is directly involved as partnership property, then, as between the parties to the partnership contract, the court which has jurisdiction over the partnership and its assets has jurisdiction over the real estate belonging to the partnership as a part of its capital assets; and in those cases where the ordinary relation of debtor and creditor exists, the jurisdiction over real estate is governed by the situs of such real estate. This case does not involve the questions passed upon in any of the Michigan cases above cited. Here, the trust funds advanced by the beneficiaries of the trust to the trustee was money afterwards invested by the trustee in a speculative project, with the consent of the joint adventurers, in Florida real estate which was purchased, improved and to a large extent sold, and from which substantial profits inured to the joint adventurers, the beneficiaries of the trust. And defendant Herbert R. Earle, trustee of the trust, is charged with having embezzled and fraudulently converted the trust funds, profits and proceeds to his own use and benefit to a large amount. It is conceded by defendant Herbert R. Earle the amount embezzled and fraudulently converted to his own use by him was substantially the sum found by the trial court to have been so embezzled and con-

verted. The trial court found that Herbert R. Earle, the trustee of such trust, invested a part of this trust fund belonging to the beneficiaries of the trust in acquiring and improving the real estate in Oakland county upon which the trial court impressed liens. If plaintiffs have any claim of right in, to or against the real estate in Oakland county, it is not as creditors of Herbert R. Earle, the trustee of the trust here involved. The theory of plaintiffs' bill of complaint and of the cross-bill of the defendant Charles H. Bennett is that plaintiffs are not creditors of Earle, but that the money embezzled and fraudulently converted by him to his own use and invested in the real estate in Oakland county was their money held by the defendant Herbert R. Earle as trustee and invested in the real estate in question; and the Wayne county circuit court, having jurisdiction of the parties and of the trust, has a right to follow the trust funds so embezzled and fraudulently converted wherever such trust funds may be found and into whatever property they may have been converted, and fasten the trust upon that property.

We think the rules laid down by the Michigan cases above cited have no application to the question involved, but that it falls within the rule of *Massie v. Watts,* 6 Cranch (10 U. S.), 148, where the supreme court of the United States, by Chief Justice Marshall, though conceding the general rule to be that suits concerning land should be brought in the jurisdiction where the land was located, said:

"'Where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practised on the plaintiff, the principles of equity give a court jurisdiction

wherever the person may be found, and the circumstance, that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction.''

It is a general rule that where the suit is one to enforce a trust on both personal and real property, the trustee may be sued wherever he can be found. *LeBreton* v. *Superior Court of the City and County of San Francisco,* 66 Cal. 27 (4 Pac. 777).

''A court of chancery has plenary power to affect the title to real estate beyond its jurisdiction by a sale and conveyance thereof by its master or otherwise by its decree in suits to execute trusts, to undo frauds, and to enforce contracts regarding such real estate, whenever it has acquired jurisdiction of the persons of the parties interested therein, for the reason that equity acts through the person.'' *Byrne* v. *Jones,* 90 C. C. A. 101 (159 Fed. 321).

''*Beckwith* v. *McBride,* 70 Ga. 642, holds that an action against a trustee to enforce a claim against trust land, is not within the constitutional provision touching exclusive jurisdiction.'' *Wheatley* v. *Blalock,* 82 Ga. 406 (9 S. E. 168).

In *Earl of Kildare* v. *Sir Morrice Eustace & Fitzgerald,* 1 Vern. 419 (23 Eng. Rep. 559), the trustee lived in England, though the lands were in Ireland, and the court in England held it had jurisdiction to enforce the trust. In *Toller* v. *Carteret,* 2 Vern. 494 (23 Eng. Rep. 916), it was held a bill to redeem from a mortgage on the island of Sarke might be maintained in the courts of England. And in *Penn* v. *Lord Baltimore,* 1 Ves. Sr. 444 (27 Eng. Rep. 1132), Lord Chancellor Hardwicke decreed specific performance of a contract concerning lands in America.

In *Graydon* v. *Church,* 7 Mich. 36, 53, it was said:

"The power thus to compel conveyances beyond the jurisdiction in cases of specific performance, is not denied by defendants' counsel. * * * And I can see no objection, in principle, to the exercise of the power in any case, in a court of equity, where it becomes necessary to do justice between the parties."

A court of equity, having acquired jurisdiction upon any well-settled ground, will ordinarily retain such jurisdiction to grant complete relief. *Whipple* v. *Farrar,* 3 Mich. 436 (64 Am. Dec. 99); *Jones* v. *Smith,* 22 Mich. 360; *Miller* v. *Stepper,* 32 Mich. 194; *Wallace* v. *Wallace,* 63 Mich. 326; *Brown* v. *Kalamazoo Circuit Judge,* 75 Mich. 274 (5 L. R. A. 226, 13 Am. St. Rep. 438); *Snyder* v. *Snyder,* 131 Mich. 658; *Sharon* v. *Fee,* 203 Mich. 152; *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558.

(7) We think the facts and circumstances disclosed by this record indicate that Florence C. Earle was a mere volunteer so far as the acquisition of the title to the real estate in Oakland county is concerned. She left the acquisition of such property entirely to her husband, Herbert R. Earle, and he acquired the property. There is no showing upon this record the money paid for this real estate belonged to Florence C. Earle, and there was testimony indicating the money invested therein constituted a part of the trust fund in the hands of Herbert R. Earle as trustee.

Wherever property, real or personal, already impressed with or subject to a trust of any kind, whether express or by operation of law, is transferred by the trustee, not in the course of executing or carrying into effect the terms of the trust, or devolves from such trustee to a third person, who is a

mere volunteer, then the rule is universal that such voluntary transferee acquires and holds the property subject to the same trust which before existed, and becomes a trustee for the original beneficiary. 3 Pomeroy Equity Jurisprudence (3d Ed.), § 1048. This rule forms the protection and safeguard of the rights of beneficiaries in all kinds of trusts. It enables them to follow trust property, as long as it can be identified, into the hands of all subsequent holders who are not in the position of *bona fide* purchasers for value without notice. 3 Pomeroy Equity Jurisprudence (3d Ed.), § 1048; *Pennell* v. *Deffell,* 4 De Gex, M. & G. 372 (3 Pomeroy Equity Jurisprudence (3d Ed.), p. 2029, note).

"It is well settled that when property held upon any trust to keep, use, disburse, or invest in a particular way, or to or for particular persons, is misapplied by the trustee, and converted into different property, or is sold and the proceeds are thus misapplied, the property can be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or *cestui que trust.*" *Pierce* v. *Holzer,* 65 Mich. 263, 272.

Where money held upon trust is misapplied by the trustee and traced into an unauthorized investment in property of any nature, the investment thus made, in the absence of a claim of *bona fide* ownership by a third person, may be treated by the *cestui que trust* as made for his benefit. The consideration for the investment is trust money and the beneficiary of the trust becomes the equitable owner of the property purchased therewith. His right is a property right, not one created by a court of equity, and if such money has been used in the purchase of real estate or personal property of any kind, the title of which is taken in the name of any other person except a

*bona fide* holder for value, such property, irrespective of whether it has increased or decreased in value, may be seized upon as the property belonging to the trust. *Massachusetts Bonding & Ins. Co.* v. *Josselyn,* 224 Mich. 159.

Here, there is some claim defendant Herbert R. Earle commingled the trust funds with funds of his own. If the trustee commingles trust funds with his own, the entire commingled property "will be treated as subject to the trust, to the extent necessary to make good the claim of the *cestui que trust* to funds traced to, and still found commingled in, the common fund, except in so far as the trustee may be able to distinguish and separate that which is his own." 65 C. J. p. 973.

In *Carley* v. *Graves,* 85 Mich. 483 (24 Am. St. Rep. 99), the question of tracing trust funds which had been commingled with the personal funds of a corporation was before the court. Speaking of the trust funds in question, it was said:

"It held it, then, not as a creditor of Carley, but as a trust fund to be delivered over to him. And it appears from the testimony in the case that, instead of performing the trust, it has mingled the money in its hands with the assets belonging to itself or used it for its own benefit. It cannot be specifically traced, but there is enough in the proof to warrant the inference that it has mingled the trust fund with its own individual means, and has rendered it impossible to be specifically traced into other property in its hands, and that it has been used by the company either to pay off its debts or to increase its assets. In either case, it would be to the benefit of its estate. We think the case of *McLeod* v. *Evans,* 66 Wis. 401 (28 N. W. 173, 214, 57 Am. Rep. 287), covers the principle which ought to be applied in this case."

(8)   It is claimed the decree is one in favor of the plaintiffs.

Plaintiffs are not entitled to the proceeds of this suit to the exclusion of. other persons beneficially interested in the trust.   The decree should run in favor of all of the beneficiaries of the trust in accordance with their respective interests therein measured by their contributions thereto, and those who take the benefit of this suit must be held to bear the burdens equally and ratably according to their respective interests therein.   This was the basis upon which the money was originally invested.

(9)   The case should not be dismissed because of a misjoinder or nonjoinder of parties.   The statute in this State, 3 Comp. Laws 1929, § 14021, provides:

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties.   New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

(10)   It is contended defendant Charles H. Bennett can have no relief against the other defendants in the case except by way of cross-bill; and this seems to have been established in *Ehinger* v. *Fiske,* 261 Mich. 240.

In that case, the court quoted from Court Rule No. 22, § 1, (1931), and the language quoted is now found as Court Rule No. 22, § 1, of the rules effective July 15, 1933.   Nevertheless, the language of that rule does not prevent the granting of relief in a case of this character.

"It is well settled that a suit in equity for an accounting constitutes an exception to the general rule in equity that affirmative relief will not be granted to a defendant unless he makes claim to it by a cross-bill or counterclaim; that a bill, in such a suit, im-

ports an offer on the part of the complainant to pay any balance that may be found against him; that upon such an accounting both parties are actors, and either is entitled, according to the result, to the aid of the court to recover the balance that may be found in his favor; and that it is not necessary for the respondent to file any cross-bill or to set up matter in his answer in lieu of such cross-bill.'' 1 Am. Jur., p. 307, § 63.

Here, though defendant Charles H. Bennett filed an answer in the nature of a cross-bill, there is no specific prayer in his cross-bill to have a lien impressed upon the real estate in Oakland county. But, considering the character of this case, the relief granted by the trial court to the defendant Bennett was warranted.

(11) There are some things in the record that are not so clearly established as we might wish. Ordinarily, the burden of proof is upon the plaintiff. But in cases of this kind, where it is conceded the defendant Herbert R. Earle held the property in controversy as a trustee, it was his duty, when called upon, to account and to disclose fully and fairly what he had done with the money belonging to the beneficiaries of the trust. Where, instead of accounting in the manner required by law, he has destroyed many of the records directly or indirectly involved and thus obstructed the parties in acquiring complete and accurate information, we are constrained to agree with the trial court whose decree is affirmed, with costs.

North, C. J., and Fead, Butzel, Sharpe and Toy, JJ., concurred with Potter, J.

Wiest, J., concurred in the result.

Bushnell, J., did not sit.