# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL PIERCE,

Plaintiff-Appellee,

v

PARTNERS FOR PAYMENT RELIEF DE III,
LLC,

Defendant-Appellant.

UNPUBLISHED
November 9, 2017

No. 334517
Lenawee Circuit Court
LC No. 15-005327-CZ

Before: MURRAY, J.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Following the death of his parents, Michael Pierce took title to their home through a quitclaim deed. The property was encumbered by a mortgage lien held by Partners for Payment Relief DE III, LLC (PPR). The circuit court voided the mortgage because although both of Michael's parents signed it, only his mother signed the accompanying promissory note. This was error and we reverse.

## I. BACKGROUND

On December 20, 1978, Jimmie and Patricia Pierce, husband and wife, purchased a home at 848 Caton Avenue in Adrian for $8,000. On October 26, 2001, Patricia alone borrowed $45,500.00 from World Wide Financial Services, Inc. (PPR's predecessor-in-interest). She alone signed the note requiring repayment of the loan. However, both she and Jimmie signed a mortgage giving World Wide a security interest in 848 Caton Avenue. Stamped under Jimmie's signature is the phrase "For the purpose of subordinating all rights and interest including dower/homestead rights."

Patricia passed away on December 30, 2011. Jimmie subsequently passed away on October 30, 2012. At that time, GMAC Mortgage serviced Patricia's loan. The outstanding balance was $41,325.89. On November 28, 2012, GMAC notified "Patricia Pierce Estate" that it was "willing to waive 90% of the unpaid balance on your loan . . . within the next thirty . . . days" for payment of $4,132.59. Michael testified that he contacted GMAC and attempted to accept the offer to pay off the mortgage for this reduced amount, but "They wouldn't talk to me because they said I wasn't the executor of the estate."

-1-

Jimmie and Patricia's daughter, Brenda Clark, was named personal representative of Jimmie's estate. On June 10, 2013, on behalf of Jimmie's estate, Clark quitclaimed 848 Caton Avenue to her brother, Michael Pierce.

On March 14, 2014, counsel for PPR notified both Jimmie's and Patricia's estates that they were in default of the loan, which then totaled $51,418.98. PPR accelerated the debt, making it due immediately. If the estates did not pay the debt within 30 days, PPR intended to foreclose. Despite that the June 2013 quitclaim deed had been recorded, PPR did not send notification in Michael's name of the default. PPR mailed the notice to 848 Caton Avenue, however, and Michael signed the receipt of certified mail.

On April 7, 2015, PPR posted a notice of foreclosure by advertisement on the property. Michael responded by filing the current action to stop the foreclosure sale scheduled for May 7. Specifically, Michael asserted that he "is the current record title holder of this real property" and as such was "a necessary party to the foreclosure proceedings." Michael continued that his parents owned the property as tenants by the entirety and yet only Patricia signed the note underlying the defaulted debt. Patricia's "death certificate was recorded and . . . her estate was on information and belief probated and a publication was made to creditors therein." Yet, PPR made no claim against the estate.[1] Michael alleged that PPR also made no claim against Jimmie's estate.

Michael's complaint concluded:

10.      That on the death of Patricia . . . the legal title to the premises passed to Jimmie . . . by operation of law. That the only signatory to the promissory note, Patricia . . ., has passed away, no claim was made in her estate, and that the surviving spouse, Jimmie . . . had no obligation to pay the underlined [sic] promissory note, upon which this mortgage foreclosure is based.

11.      That [PPR] has waived its right to foreclose on the mortgage for the reason that a proper claim was not made in the Estate of Patricia . . . . The mortgage is not valid as to Jimmie . . . for the reason that he did not sign the promissory note and that upon the death of Patricia . . . absolute title passed to him by virtue of the tenancy by entireties.

12. That the mortgage being foreclosed upon states that if Jimmie . . . did not sign the promissory note that he is not personally obligated to pay the sums secured by the mortgage and without any obligation to pay said sums as to Jimmie . . . the promissory note is null and void and the debt cannot be foreclosed upon.

13.      That [Michael] will suffer irreparable harm and injury if the mortgage foreclosure proceeding are [sic] allowed to go forward for the reason that he may

---

[1] In actuality, no probate matter was opened after Patricia's death.

suffer the loss of the real property, which he now owns without being made [a] proper party to the action and for all the other reasons set forth in this Complaint.

Accordingly, Michael sought a preliminary injunction to stay the foreclosure sale and a declaratory judgment that the mortgage and promissory note were null and void. The court issued the requested injunction on May 4.

As noted by Michael on appeal, PPR admitted in its answer that he was "a necessary party to the foreclosure as a title report does indicate that" his quitclaim deed was "in fact recorded." Citing MCL 700.3803, PPR responded that it was not required to file a claim against either Jimmie's or Patricia's estate unless it intended to pursue a money judgment because it was a secured creditor and could proceed against the collateral property directly. Moreover, probate did "not extinguish a Mortgagee's rights." PPR further argued that Jimmie consented to the mortgage lien despite that he was not liable to use his personal and separate assets to repay Patricia's debt.

PPR later sought summary disposition of Michael's action pursuant to MCR 2.116(C)(8) and (C)(10). PPR reiterated that it was not required to file a claim against either Patricia's or Jimmie's estate for repayment of the loan. A mortgagee is a secured creditor exempted from this probate requirement by MCL 700.3803(3). And while MCL 700.3815 precludes creditors from issuing an "execution" or "levy" against an estate's property, it exempts mortgages from the ban. Ultimately, PPR contended that although "there is no one with personal liability for the loan due to the borrower being deceased, [PPR] continues to have perfected lien against the property."

In its accompanying brief, PPR expanded its argument, noting that Patricia and Jimmie owned 848 Caton Avenue as tenants by the entirety. PPR contended that it was permitted to foreclose on the property because both spouses consented to the mortgage, even though only Patricia was liable on the promissory note. And the lien survived Patricia's and Jimmie's deaths.

Michael retorted that PPR's arguments were irrelevant. PPR had not named him as a party to the foreclosure proceedings and yet admitted he was a necessary party. Michael further contended that he would present witness testimony at trial to establish that Jimmie attempted to repay the loan upon GMAC's offer of a reduced payoff, but GMAC wrongfully refused to communicate with him. PPR would thereby be estopped by its predecessor's actions from foreclosing on the property. Michael further argued that Jimmie "signed the mortgage . . . with the stated limited purpose of waiving homestead and dower rights and allegedly all other rights. . . . Nothing in his signature . . . changed the fact that this was a tenancy by entireties." As Jimmie never signed or consented to the promissory note, it was extinguished upon Patricia's death and Jimmie became the sole owner of the property free and clear.

On April 28, 2016, the court held a bench trial which ended with a hearing on PPR's summary disposition motion. Michael was the only witness at the trial. Michael testified that he received title by quitclaim from his father's estate. Jimmie had bequeathed the property to Michael in his will. A month after Jimmie's death, a notice arrived in the mail from GMAC indicating that Patricia's estate had defaulted on the loan and offering to take a reduced payoff. As noted, Michael claimed that he contacted GMAC but its agent would not speak to him because he was not the personal representative of Patricia's estate. He further noted that GMAC

-3-

"constantly called" his parents' house phone. The agent always asked to speak to Patricia, and Michael always explained that she had passed. GMAC called even before Jimmie's death and Jimmie also explained that Patricia was dead and sent the mortgagee her death certificate. GMAC also refused to speak to Jimmie even though Michael thought Jimmie was the personal representative of Patricia's estate. (Michael later testified that no one had started a probate estate for Patricia.) Michael further claimed that although Clark was the personal representative, she refused to contact GMAC on his behalf. Michael admitted that he never attempted to simply send in the payment requested by GMAC, "because I didn't have nothing to mail anything with" like a statement or "payment book."

In relation to the mortgage and promissory note, Michael admitted that Jimmie signed the mortgage. However, Michael did not believe his father knew that Patricia had taken out the loan. Michael later clarified that Jimmie "didn't want no part of . . . the second mortgage."

At the close of Michael's testimony, PPR moved to dismiss the action. It asserted that neither Michael's testimony nor the documentary evidence established that its predecessor-in-interest "was somehow not acting in good faith" and that the mortgage lien remains. Michael retorted that (1) PPR failed to name him as a necessary party to the foreclosure, (2) PPR was estopped from foreclosing because its predecessor made a payoff offer but then refused to permit any acceptance, and (3) when Jimmie signed the mortgage, he did not agree to repay the loan or to waive "his legal status as a tenant by the entirety.

PPR responded that the current lawsuit "accomplished th[e] goal of staying the sale and canceling the sale." PPR would need to restart the foreclosure process and this time would properly serve notice on Michael, negating Michael's first challenge. PPR contended that Michael's estoppel argument was a nonstarter because GMAC likely would have accepted Michael's reduced payoff had the proper party to the negotiation—the personal representative of the estate—agreed to speak to the lender. Finally, PPR argued:

> And regarding the tenancy by the entirety issue, yes, you cannot encumber a debt that's solely . . . owed by one party against entireties' property unless both parties consent, and both parties signing the mortgage allows that to happen. That's the sole purpose of having both spouses sign the mortgage even if one of them is not personally liable on the loan. We're not arguing Jimmie's personally liable. We're not seeking a deficiency against his estate, just the ability to foreclose on a lien that was properly secured against the property.

The circuit court denied PPR's summary disposition motion, reasoning:

> [Michael] was never named as a party. There was no communication exchanged with him. I appreciate your argument on the mortgage, but that doesn't get you to the loan obligation. And I think one without the other doesn't work. I think you need to have him sign[] on that note, and you do not, to the best of what the paperwork I have before me, have that signature obligating him to that.

The court then acknowledged that Jimmie and Patricia owned the property as tenants by the entirety and that normally the lien would not be extinguished by the death of one spouse.

-4-

However, "no one else consented to the obligation of the note to be assessed against their interest in the property, including" Michael. The court opined that this case "slipped through the cracks" for PPR because of its policy prohibiting it from speaking to someone other than the personal representative. As such, the court declined to find that PPR acted with "unclean hands," warranting the estoppel of its defenses. Ultimately, however, the court ruled in Michael's favor, held the mortgage and promissory note null and void as to Michael, and quieted title in his name.

PPR subsequently sought an amended judgment or new trial. PPR challenged the procedure employed by the court—proceeding with the trial before ruling on its summary disposition motion. PPR also contended that it was entitled to a new trial pursuant to MCR 2.611(e) because the court's decision voiding the mortgage lien was against the great weight of the evidence. Specifically, PPR noted that Jimmie had consented to the mortgage, encumbering his property interest as a tenant by the entirety. According to longstanding property law, that mortgage was valid, outlasted Patricia and Jimmie, and was the first priority lien.

At the hearing on PPR's motion, its counsel argued that despite the limiting language under Jimmie's signature on the mortgage, he "reaffirmed the fact that he was subordinating his rights to that of the . . . mortgagee." Counsel continued,

> Furthermore, there's case law in Michigan that states that property held in tenancy by the entireties, whether or not there's some sort of supposed qualifying language, as long as the mortgage instrument recognizes that they're husband and wife, any sort of reservation of rights or dower rights is ignored so long as both husband and wife sign the mortgage as husband and wife.

The court denied PPR's motion. PPR now appeals.

## II. ANALYSIS

We review de novo a circuit court's summary disposition ruling. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) "tests the factual support of a plaintiff's claim." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. [*Id*.]

The circuit court found the mortgage null and void because Jimmie and Patricia were tenants by the entirety and although Jimmie signed the mortgage, he did not join the promissory note. However, Jimmie's consent to a mortgage lien against his property validates the mortgage.

In *Tkachik v Mandeville*, 487 Mich 38, 46-47; 790 NW2d 260 (2010), the Supreme Court described that "[a] tenancy by the entirety is a type of concurrent ownership in real property that is unique to married persons" in Michigan. "The ingredients and incidents of such a title or estate give it an exclusive character and distinguish it from all other modes of holding." *Jacobs v Miller*, 50 Mich 119, 124; 15 NW 42 (1883). Under a tenancy by the entirety, the married couple represents a single unit and takes the property as an indivisible whole. *Rogers v Rogers*, 136 Mich App 125, 134; 356 NW2d 288 (1984). Neither has a separable interest from the other. Therefore, neither spouse can convey or encumber the property without the consent of the other. *Id*.; see also *Long v Earle*, 277 Mich 505, 517; 269 NW 577 (1936); *Field v Steiner*, 250 Mich 469, 477; 231 NW 109 (1930). And when one spouse dies, the entirety of the property passes directly and immediately to the survivor without travelling through the decedent's estate. *Tkachik*, 487 Mich at 46-47.

Specific to the facts now before us, one spouse cannot separately mortgage his or her interest in property held as tenants by the entirety. *Long*, 277 Mich at 517. But that is not what happened here. In this case, Patricia did take on a separate debt. However, Jimmie contemporaneously agreed to use their property, held as tenants by the entirety, as collateral for that debt—Jimmie signed the mortgage along with Patricia. The language stamped underneath Jimmie's signature actually clarifies that the lender's security interest took priority over Jimmie's interest. "For the purpose of subordinating all rights and interests including dower/homestead rights" signifies that Jimmie subordinated *all* of his rights, including his right of survivorship, to the lender's secured interest in the property in the event Patricia did not pay off the loan before her death. Following Patricia's death, Jimmie was not required to invade any other asset to pay off Patricia's loan. But his failure to do so allowed PPR to invoke its rights under the mortgage consented to by Jimmie and foreclose upon the property.

The circuit court erroneously relied upon *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133; 657 NW2d 741 (2002), in resolving this matter. *Townsend* is legally and factually inapposite. The parties in *Townsend* were a mother and son who purchased real property as joint tenants with full rights of survivorship, *id*. at 134, not a married couple purchasing land as tenants by the entirety. Moreover, the mother in *Townsend* signed the mortgage alone. *Id*. When the mother passed, full fee simple title passed automatically to her son as a joint tenant with full survivorship rights. *Id*. at 136. As the son was not a party to the mortgage and the mother's interest passed directly to him and not to her estate, the mortgage was extinguished. *Id*. In this case, Jimmie's act of signing the mortgage encumbered his remaining property interest after Patricia's death, unlike the situation presented in *Townsend*.

The circuit court also erred in relying on *Estes v Titus*, 481 Mich 573; 751 NW2d 493 (2008). In *Estes*, a husband in a divorce proceeding agreed to cede almost all his property to his wife. At the time of the divorce, a wrongful death lawsuit was pending against the husband. The divorce property settlement transferred the husband's property interests to his wife, placing them out of the judgment creditor's reach. The question was whether this transfer violated the Uniform Fraudulent Transfer Act (UFTA). *Id*. at 576-578. The Court noted that Estes' judgment lien could not have attached to the Tituses' real property during their marriage as a judgment against one spouse cannot be used to support a lien against property held as tenants in the entirety. *Id*. at 581. Looking at the statutory language in UFTA, the Court further determined that real estate held as tenants by the entirety "cannot be the subject matter of a

UFTA claim if only one spouse is the debtor." *Id*. Again, the current matter is factually and legally distinct because Jimmie signed the mortgage, agreeing to encumber his interest in the subject property.

As Jimmie possessed title subject to a mortgage lien, that was all he or his estate could transfer. When Jimmie died, his daughter opened a probate estate and Jimmie's property became the property of his estate. Jimmie's daughter, acting as personal representative, transferred 848 Caton Avenue to Michael via quitclaim deed. Pursuant to MCL 565.3, a quitclaim deed passes "all the estate which the grantor could lawfully convey by a deed of bargain and sale." The grantee of a quitclaim deed "acquires the right and title which his grantor had, and no other." *Doelle v Read*, 329 Mich 655, 657; 46 NW2d 422 (1951) (quotation marks and citation omitted). If the grantor holds land subject to a mortgage lien, he or she can quitclaim title subject to a mortgage lien and nothing greater. *Lucking v Barker*, 274 Mich 103, 106; 264 NW 306 (1935).

Pursuant to the quitclaim deed, Michael took title to 848 Caton Avenue subject to PPR's mortgage interest. The circuit court therefore erred in voiding PPR's mortgage and quieting title in Michael. The circuit court should have summarily dismissed Michael's action, allowing PPR to reinstate its mortgage foreclosure proceedings naming Michael as a necessary party in interest.

We reverse.

/s/ Christopher M. Murray
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher